# Staunton.

## D. B. FERGUSON, ET ALS, v. BOARD OF SUPERVISORS OF ROANOKE COUNTY.

### September 21, 1922.

1. STREETS AND HIGHWAYS—*Tolls—Macadamized Roads.*—Acts 1920, p. 398, authorized the board of supervisors of Roanoke county to maintain toll gates on roads macadamized by it, except roads in the State highway system. Complainants filed certain specifications of the Highway Department, showing the character of macadamizing required on State highways, and insisted that the road in question in its construction fell far short of such requirements, and therefore the road had not been macadamized within the meaning of the statute.

   *Held:* That this was not conclusive of the question of whether the road was macadamized or not, as all macadamized roads are not built by the same specifications.

2. STREETS AND HIGHWAYS—*Macadamized Roads—Definition.*—While macadamized roads are those which are covered with small, consolidated, broken stone, either on a soft or a hard substratum, this very definition shows that all macadamized roads are not built by the same specifications. The characteristic feature of such roads is that the materials used in their construction, chiefly broken stone, are so compacted as to exclude moisture therefrom so far as it is possible to do so, and their peculiar excellence depends upon this compactness.

3. STREETS AND HIGHWAYS—*Toll Gates—Authority of Supervisors to Collect Tolls—Section 2743 of the Code of 1919.*—Section 2743 of the Code of 1919 confers authority on boards of supervisors "to establish or abolish tolls on roads built and maintained wholly by the county and not receiving aid from the State."

   *Held:* That the statute confers plenary power upon boards of supervisors to collect tolls on county roads upon which no State funds are expended.

4. STREETS AND HIGHWAYS—*Character of Public Highways—Voluntary Contributions.*—Voluntary contributions made by citizens for the improvement of public highways do not change their character or in any wise diminish the control thereof which is by law vested in the public authorities.

5. COUNTIES—*Definition—Powers—Interference by Equity.*—Counties are *quasi* municipal corporations, and the boards of supervisors. as the

36

representatives of the political body, the county, are clothed with certain legislative and discretionary powers, and equity as a general rule refuses to interfere by injunction with the exercise of those discretionary powers at the suit of a private citizen.

6. STREETS AND HIGHWAYS—*Legislative Control—Boards of Supervisors.*— Subject only to constitutional limitation, the legislature has supreme control over streets and highways. And section 65, Constitution of 1902, in express terms provides that the General Assembly may, by general laws, confer upon the boards of supervisors of counties and the councils of cities and towns, such powers of local and special legislation, as it may from time to time deem expedient.

7. STREETS AND HIGHWAYS—*Power of Board of Supervisors to Erect Toll Gates—Injunction.*—The erection of toll gates in Virginia on roads built and maintained wholly by the county and not receiving aid from the State, in the discretion of the board of supervisors, is sanctioned by law (Code of 1919, section 2743) and injunction does not lie to restrain the exercise of such a power so lawfully conferred unless and until it is shown that the power has been exceeded or abused to the injury of the complainant.

8. EQUITY—*Jurisdiction—Supervision of Governmental Action.*—Equity, however, is consistent, recognizes its own limitations, and is not so inconsistent as to attempt the revision or supervision of governmental action lawfully exercised through the legislative department. The evil arising out of the unwise exercise of legislative discretion which causes inconvenience, but invades no right, can only be corrected, either by appeal to the legislative department to repeal the law, or at the ballot box by the defeat of those charged with its administration.

9. EQUITY—*Bill—Answer.*—Allegations of a bill in equity, which are denied by the answer and not proven, must be ignored.

10. COUNTIES—*Board of Supervisors—Presumption of Good Faith.*—The action of the board of supervisors in such local matters, with reference to which they are invested with discretion, in the absence of contrary proof, is presumed to be in good faith and legal.

11. APPEAL AND ERROR—*Presumption that Decree of Trial Court is Right.*— Upon appeal the burden is upon the appellants to show error, and if they fail to do so, there is a presumption that the decree of the trial court is right.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for defendant. Complainants appeal.

*Affirmed.*

The opinion states the case.

*Jackson & Henson*, for the appellants.

*R. T. Hubbard* and *Kime & Kime*, for the appellees.

PRENTIS, J., delivered the opinion of the court.

The appellants are citizens of Roanoke county, who filed their bill against the board of supervisors of Roanoke county for the purpose of forcing the removal of a tollgate and the prevention of the collection of tolls, upon a certain public road in that county. There was a demurrer which does not seem to have been passed upon by the trial court. There was also an answer, which denied the material allegations of the bill, and alleged facts which, if proved, would have constituted a complete defense. Depositions were taken by the complainant and there was a final decree denying the injunction prayed for and dismissing the bill, from which this appeal was taken.

It appears that the gate here complained of had been established at the instance of a large number of interested citizens, who had agreed to contribute $5,137, to be expended in the improvement of the road, which the board had supplemented by an appropriation of $500 for the same purpose.

There are two pertinent statutes: One, Code section 2743, conferring legislative powers as to certain local matters upon boards of supervisors of every county, among which is the authority to establish and maintain tollgates, which is expressed in this language: "To establish or abolish tolls on roads built and maintained wholly by the county and not receiving aid from the State." The other a special act (Acts 1920, p. 398) which reads thus: "The board of supervisors of Roanoke county is hereby authorized and empowered

at its discretion, to erect and maintain tollgates on such roads in the aforesaid county as the said board may have heretofore macadamized or may hereafter macadamize, except roads in the - State highway system, charging thereon such toll as the aforesaid board may deem advisable and proper, with the right to grant rebates on tollage to any person, who may have paid anything out of their private funds toward the construction of any such roads; provided, however, that no tollgate shall be erected on any road within one mile of the corporate limits of Roanoke city; except that where a tollgate is now established within the mile limit the same may be continued."

[1] The only testimony in the record is that of three witnesses for the complainants, to the effect that although broken stone had been used on its surface, the road had never been macadamized, and the case appears to have been largely rested upon this contention. By agreement of the parties the judge of the trial court personally inspected the road before entering the decree. As tending to support the contention that it had never been mdamized, the complainants have also filed certain specifications of the Highway Department, showing in detail the character of macadamizing which is required on State highways, and insist that as this road in its construction falls far short of such requirements, therefore the road has not been macadamized within the meaning of the special act above cited.

[2] We cannot agree that this is conclusive of that question. While macadamized roads are those which are covered with small, consolidated, broken stone, either on a soft or a hard substratum (Standard Dict.), this very definition shows that all macadamized roads are not built by the same specifications. The word is used to indicate a certain type of road, first conceived

by the Scottish engineer, John Loudon Macadam. The characteristic feature of such roads is that the materials used in their construction, chiefly broken stone, are so compacted as to exclude moisture therefrom so far as it is possible to do so, and their peculiar excellence depends upon this compactness. It may be that the State Highway Department requires the construction of State highways to be of a very much higher and more permanent type than would be required or be reasonably necessary in the construction of a county highway over which there would be less travel. However this may be, the General Assembly has not in the act referred to defined the word "macadamize," and we know of no sufficient reason for giving it any other than the usual and accepted construction.

We are referred to certain cases as defining the word, and describing such roads: *Partridge* v. *Lucas*, 99 Cal. 520, 33 Pac. 1083; *McNamara* v. *Estes*, 22 Ia. 255; *State ex rel. Haydon* v. *Curry*, 1 Nev. 251; but we cannot agree with the conclusions which counsel for the appellants appear to draw therefrom, or agree with him in his conclusion that under this statute, to macadamize a road, means to build a road according to certain fixed and definite specifications.

[3, 4] In this case there is the additional consideration that the board is not limited by the special act, but under Code, section 2743, may establish tolls on any county road except those receiving State aid. We say this because the language of that statute, fairly construed, recognizes only two classes of public roads—that is, State highways or roads receiving State aid, and county highways or public roads which do not receive such aid. Voluntary contributions made by citizens for the improvement of the public highways do not change their character or in any wise diminish

the control thereof which is by law vested in the public authorities. That statute then appears to confer plenary power upon boards of supervisors to collect tolls on such county roads—that is, on those upon which no State funds are expended.

Possibly reference to some general doctrines may be helpful.

[5] Counties are *quasi* municipal corporations, and the boards of supervisors, as the representatives of the political body, the county, are clothed with certain legislative and discretionary powers, and equity as a general rule refuses to interfere by injunction with the exercise of those discretionary powers at the suit of a private citizen.

This comprehensive statement, among others, appears in 2 High on Injunctions (4th ed.), sec. 1240: "No principle of equity jurisprudence is better established than that courts of equity will not sit in review of the proceedings of subordinate political or municipal tribunals, and that where matters are left to the discretion of such bodies, the exercise of that discretion in good faith is conclusive, and will not, in the absence of fraud, be disturbed. And the fact that the court would have exercised the discretion in a different manner will not warrant it in departing from the rule." Many cases are there cited in support of this general doctrine.

[6] It is also true, as a general proposition, that, subject only to constitutional limitation, the legislature has supreme control over streets and highways (*Norfolk, etc., Co.* v. *Norfolk,* 115 Va. 177, 78 S. E. 545, Ann. Cas. 1914D, 1067, etc.), while Constitution, section 65, in terms provides that, "The General Assembly may, by general laws, confer upon the boards of supervisors of the counties and the councils of cities and towns,

such powers of local and special legislation, as it may from time to time deem expedient, not inconsistent with the limitations contained in this Constitution." *Polglaise's Case*, 114 Va. 850, 76 S. E. 897; *Standard Oil Co.* v. *Commonwealth*, 131 Va. 830, 109 S. E. 317.

Courts of equity have no authority to interfere by injunction with the exercise in good faith by municipal bodies of discretionary powers conferred upon them by law. *Harrisonburg* v. *Roller*, 97 Va. 584, 34 S. E. 523.

The principle is extended even to a private corporation, for courts of equity cannot substitute their own business discretion and judgment for that of a company on matters entrusted to it by law. This is held with reference to a cemetery company, where a decree of the trial court which held that the fees fixed for digging graves was unreasonable, and was here reversed because the general law authorized the company in its discretion to make reasonable rules and regulations for the management of its affairs and the disposition of its property. *Roanoke Cemetery Co.* v. *Goodwin*, 101 Va. 605, 44 S. E. 769.

In *Reynolds* v. *Shreveport*, 13 La. Ann. 426, it was held that where the subject matter is within the scope of the powers and duties of the officials of a municipal corporation, the presumption is in favor of the propriety and good faith of their conduct, and the complainant must make out a good case of wilful oppression in order to obtain relief from the court. This presumption is founded on reason as well as sanctioned by law.

In a case involving the appropriation of county funds for constructing an expensive stone trench or channel as substitute for a tubular bridge which had proved to be too small to carry the flow of water

across a highway, it was held that a court of equity is not a tribunal to correct such alleged errors of subordinate departments of government, because to them is committed the discretion of deciding upon the necessity of building bridges, with power to determine whether they are necessary to the safety, convenience and freedom of the public travel, and that so long as they exercise their discretion honestly, and to the best of their ability, and not to further a corrupt purpose, their determinations are beyond the supervisory power of any court.  *McKinley* v. *Chosen Freeholders of Union County*, 29 N. J. Eq., p. 164.

[7] The erection of tollgates in Virginia on such county roads, in the discretion of the board of supervisors, is sanctioned by law and injunction does not lie to restrain the exercise of such a power so lawfully conferred unless and until it is shown that the power has been exceeded or abused to the injury of the complainant.

Authorities could be multiplied, but we shall content ourselves with citing these: *Mt. Carmel* v. *Shaw*, 155 Ill. 37, 39 N. E. 584, 27 L. R. A. 580, 46 Am. St. Rep. 311; *People* v. *New York*, 32 Barb. 103; *State* v. *Mayo*, 106 Me. 62, 75 Atl. 295, 26 L. R. A. (N. S.) 508, 20 Ann. Cas. 512; *Valparaiso* v. *Hagen*, 153 Ind. 337, 54 N. E. 1062, 48 L. R. A. 707, 74 Am. St. Rep. 305; *Coszler* v. *Georgetown*, 6 Wheat. 593, 5 L. Ed. 339; *Jacobson* v. *Massachusetts*, 197 U. S. 11, 49 L. Ed. 643, 25 Sup. Ct. 358, 3 Am. & Eng. Ann. Cas. 765.

[8] Applying the principle to the facts of this case, it is to us apparent that the establishment of such toll roads is by the Virginia Constitution and statute committed to the legislative discretion of the boards of supervisors, and courts of equity, in the absence of some fraud or abuse of power, will decline to run a

race with the local authorities in the determination of the wisdom or unwisdom of the establishment and maintenance of these tollgates on this county road. The long arm of equity will be extended, and if necessary lengthened, for the preservation of property rights which are imperiled by the unauthorized or unconstitutional exercise of power' by legislative sanction. Equity, however, is consistent, recognizes its own limitations, and is not so inconsistent as to attempt the revision or supervision of governmental action lawfully exercised through the legislative department. The evil arising out of the unwise exercise of legislative discretion which causes inconvenience, but invades no right, can only be corrected, either by appeal to the legislative department to repeal the law, or at the ballot box by the defeat of those charged with its administration. The power to erect and the responsibility for the maintenance of such tollgates rest with the board of supervisors while in office, as the representatives of the people, and their discretion will not be supervised or controlled by the courts, unless it is manifest that they have abused and exceeded their power. Mere differences of opinion between those in office charged with such responsibilities and those out of office who differ with them in judgment will not sustain judicial interference.

[9-11] Then, as confirming the result already indicated, we observe that there are certain presumptions which arise here out of this meagre record: (1) That the allegations of the bill, which are denied by the answer and not proved, must be ignored; (2) That the action of the board of supervisors in such local matters, with reference to which they are invested with discretion, in the absence of contrary proof, is presumed to be in good faith and legal; and (3) That

the burden is upon the appellants to show error, and if they fail to do so, there is a presumption that the decree of the trial court is right.

Upon the whole case we are of opinion to affirm the decree.

*Affirmed.*