**Laura Jean DEEM, Appellant,**

v.

**CHARLES E. SMITH MANAGEMENT, INC., Appellee.**

No. 85–1996.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1986.

Decided Sept. 8, 1986.

Rehearing and Rehearing En Banc Denied Oct. 9, 1986.

Charles Shepherd Cox, Jr., Alexandria, Va., for appellant.

Anthony E. Grimaldi (Doherty, Sheridan & Grimaldi, Fairfax, Va., on brief), for appellee.

Before HALL, MURNAGHAN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

The plaintiff in this case sued the defendant landlord for failing to protect her from a criminal assault by an unknown third person. Because we find that Virginia law imposed no such duty of protection, we affirm the judgment for defendant.

## I.

Laura Jean Deem was the resident manager of the Windsor Towers apartment complex in Arlington, Virginia. On the night of March 19, 1983, she returned to her apartment at 9:00 after a personal errand. Because the front lot was full, she parked her car behind the building and started to walk around to the entrance. At the rear corner, a man sprang from the bushes, accosted Deem, and beat and sexually assaulted her.

Deem sued her landlord and employer, Charles E. Smith Management, Inc. She alleged that Smith Management had left the parking lot in an unsafe condition, without adequate lighting, despite the company's knowledge of previous criminal attacks in the lot. This breach of Smith Management's duties to her as a tenant and as an employee, she argued, had led in part to her injuries.

The district court heard testimony on behalf of Deem and then directed a verdict for Smith Management. The court held that the landlord did not have a duty under Virginia law to protect its tenant from the criminal acts of third parties; even if such a duty did exist, the court ruled, Deem had not offered sufficient evidence to support the conclusion that the Windsor Towers lot was known to be unsafe. The court noted further that there was "no evidence" that an absence of lighting was a "particular cause" of the assault. We affirm.

## II.

As a matter of Virginia common law, this case is controlled by *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 207 S.E.2d 841 (1974), where a tenant sued her landlord after her husband died from injuries suffered in an assault.* The Virginia Supreme Court described the principal issue as "whether the landlord owed the duty to protect the tenant from a criminal act of an unknown third party." *Id.* at 843. The court noted that this duty does inhere in some relationships, including those between a common carrier and its passenger or an innkeeper and its guest. *Id.* at 844. In the landlord-tenant relationship, however, "Gulf Reston was under no duty to protect Rogers from an intentional criminal act committed by an unknown third person." *Id.* at 845. The same conclusion applies equally to Smith Management and Deem: the landlord owed no duty of care. And "where there is no legal duty to exercise care, there can be no actionable negligence." *Virginia Ry. & Power Co. v. Winstead's Adm'r*, 119 Va. 326, 89 S.E. 83, 84 (1916) (citations omitted).

Deem argues that the common law rule of *Gulf Reston v. Rogers* has been superseded by the Virginia Residential Landlord and Tenant Act, Va.Code §§ 55–248.2 *et seq.* In her view, this statute required Smith Management to maintain the premises so as to protect its tenants from foreseeable criminal acts. She points to the landlord's obligation under § 55–248.13(a)(3) to "keep all common areas shared by two or more dwelling units of the premises in a clean and safe condition." She claims, in addition, that the lighting in the Windsor Towers parking lot did not satisfy the standards of the Arlington County Code and the landlord's obligation under § 55–248.-13(a)(1) to "comply with the requirements of applicable building and housing codes materially affecting health and safety."

---

* Although resident manager of Windsor Towers, Deem here appears more akin to a tenant than an employee. The attack occurred in the evening on Deem's return to her apartment from a personal errand after the close of the business day. Whatever her status, however, our reasoning would apply at a minimum to one such as plaintiff who resides in an apartment complex, who pays rent, and who seeks to hold his or her landlord responsible for the acts of a third party.

For the right to enforce these duties in a suit for damages, she relies on § 55–248.21: "the tenant may recover damages and obtain injunctive relief for noncompliance by the landlord with the provisions of the rental agreement or of this chapter." *See also* § 55–248.40.

■ We disagree with Deem's interpretation of the landlord's statutory duties to keep the premises in a safe condition and to comply with local housing codes affecting safety. The Virginia Residential Landlord and Tenant Act does not define a "safe condition" as used in § 55–248.13(a)(3) or "safety" as used in § 55–248.13(a)(1). We believe, however, that those terms refer to the protection of the tenant from injuries caused by failures of the building—collapsing stairs, faulty walls, dangerous windows. This interpretation is consistent with the common law recognition of a landlord's "duty to use ordinary care to keep [common areas] in a reasonably safe condition." *Revell v. Deegan,* 192 Va. 428, 65 S.E.2d 543, 546 (1951). This interpretation still recognizes that there exist legal duties in Virginia to promote tenant safety apart from the duty to protect against third-party acts.

Deem's version of the statutory notion of safety, on the other hand, conflicts directly with the common law rule of *Gulf Reston v. Rogers* that the landlord's duty to maintain safe conditions does not include a duty of care for criminal acts by unknown third parties. Virginia law has long been that "the best construction of the statute is, to construe it as near to the reason of the common law as may be...." *Chichester v. Vass,* 5 Va. (1 Call) 83, 102 (1797); *see also Wicks v. City of Charlottesville,* 215 Va. 274, 208 S.E.2d 752, 755 (1974), *appeal dismissed,* 421 U.S. 901, 95 S.Ct. 1548, 43 L.Ed.2d 769 (1975) ("The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law.").

This conclusion is reinforced by the type of question involved in determining whether Smith Management had a duty to protect Deem from unknown criminals. The issue is one of "proximate cause," or as one authority has described it, "essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." Prosser, *Law of Torts,* § 42 at 244 (4th ed. 1971).

That policy is one for Virginia to set. Its courts and legislature must strike the balance between the need to protect the safety of tenants and the need to ensure affordable low and moderate income rental housing throughout the state. The extent to which landlords are liable for third-party acts profoundly affects that equation. If landlords face such liability, tenant safety might be greater, but rents may be higher, and apartment units, especially in urban centers, may become more scarce. Such imponderables must be resolved by the state. The Virginia Supreme Court has said directly that no duty exists in this situation, and the General Assembly has not spoken distinctly. The federal court, following the available state declarations of policy, must respect the opinion in *Gulf Reston v. Rogers.* To substitute another version of the proper policy would be an improper interference of federal authority with the choices of the state.

The judgment of the district court is accordingly

AFFIRMED.