## CIRCUIT COURT OF HENRICO COUNTY

Whitlock

v.

Wilton Properties

March 11, 1987

Case No. 86-L-287

By JUDGE JOSEPH F. SPINELLA

The plaintiff in this case has filed a suit for damages resulting from a forceable rape in the parking lot of the defendant's apartment project. The defendant filed a demurrer to the plaintiff's case which was sustained and leave given the plaintiff to amend the motion for judgment. The plaintiff then amended her motion for judgment and the defendant filed another demurrer to the plaintiff's amended motion for judgment and that is the subject of this ruling.

The plaintiff has alleged in the amended motion for judgment that the plaintiff was a tenant in the apartment project owned and operated by the defendant known as "Westchester Apartments" located at 9014 Patterson Avenue in the County of Henrico and that she entered into a written lease with the defendant in February of 1985. The plaintiff also alleges that she was attacked while in the parking lot adjacent to her apartment at 7:30 p.m. on November 17, 1985. The plaintiff alleges as a duty upon the defendant that it knew or should have known the repeated high incidence of crime in the area and that during the two years preceding the incident thirteen rapes or sex crimes were reported to the police from the general area

around the apartment project, four of which were reported from the Westchester Apartments. The plaintiff also states that 68 burglaries were reported in the area within a two-year period, twenty-two of which occurred in the subject apartments: 195 larcenies, seventeen of which occurred in the defendant's apartments; 46 prowlers, nine of which were in the defendant's project, and the report continues with a number of various minor crimes such as trespassing, alcohol and drug violations, etc.

The plaintiff also alleges that at one point prior to the alleged rape of the plaintiff, the defendant wrote a letter to all tenants advising them of recent thefts, break-ins, trespassing and vandalism within the complex. The plaintiff then alleges that the defendant failed to take reasonable security precautions to minimize the risk of harm to the tenants. She further alleges that the defendant was negligent in failing to provide adequate lighting in the parking lot and that the existing lighting was inadequate in terms of foot candles and was therefore less than necessary for proper illumination.

In Count I the plaintiff alleges that the defendant owed the duty to the plaintiff to maintain the premises in a safe condition under § 55-248.13(a)(3) of the Landlord and Tenant Act. She states that adequate lighting should have been provided by the defendant to allow a measure of reasonable protection to the plaintiff and that as a result of the inadequate lighting the plaintiff sustained certain damages.

In Count II the plaintiff alleges the same duty under the Landlord and Tenant Act to keep the premises safe and that the defendant failed to maintain adequate security measures in and around the parking lot in addition to its failure to supply proper lighting.

In Count III the plaintiff alleges that the defendant was aware of the criminal activity in the area and that it was foreseeable and therefore the defendant should have taken precautions to prevent the rape.

In Count IV the plaintiff alleges that there was an implied warranty to furnish adequate safety measures to protect the plaintiff against foreseeable criminal activity and the failure to take these safety measures was a breach of the implied warranty of habitability and that this was the cause of her injuries.

The motion for judgment refers to the lease between the parties but did not attach a copy of the lease nor did it make the lease a part of the pleading, consequently it must be assumed that the lease did not contain any provisions which would require the defendant to provide the plaintiff with any protection from criminal activity in the form of guards, special lighting, walls or fencing. The plaintiff lived in the apartment complex from February to November before this incident occurred with full knowledge of the lighting conditions on the parking lot. The pleadings do not allege that she filed any complaints concerning the lighting or any other safety conditions which she may have considered to be a breach of any implied warranty of habitability.

The Court can only consider the allegations of fact contained in the motion for judgment which must be taken as admitted by the defendant for purposes of this demurrer. The plaintiff relies upon the alleged duty of the defendant under Va. Code § 55-248.13(a)(3) to "keep all common areas shared by two or more dwelling units of the premises in a clean and safe condition." This provision is found in the Landlord and Tenant Act and the plaintiff contends that the "Safe Condition" referred to in the statute places a duty on the landlord to take steps to protect tenants from criminal acts when the incidence of crime in the area is at a high level. The defendant has taken the position that the "Safe Condition" referred to in the statute is a reference to the physical premises so as to prevent injuries to tenants resulting from defects in the premises.

The legislature stated the purposes of the Landlord and Tenant Act in § 55-248.3 of the Code to be as follows:

The purposes of this Chapter are to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants; to encourage landlords and tenants to maintain and improve the quality of housing; and to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth. . . .

The legislature did not state that the purpose of this Act was to protect a tenant from criminal acts committed by a third person on the premises.

In a case decided September 8, 1986, *Laura Jean Deem* v. *Charles E. Smith, Management, Inc.*, 799 F.2d 944 (4th Cir. 1986), by the United States Court of Appeals for the Fourth Circuit the Court considered Section 55-248.13(a)(3) of the Code of Virginia and stated:

> We disagree with Deem's interpretation of the landlord's statutory duties to keep the premises in a safe condition and to comply with local housing codes affecting safety. The Virginia residential Landlord and Tenant Act does not define a "Safe Condition" as used in Section 55-248.13(a)(3) or "Safety" as used in Section 55-248.13(a)(1). We believe, however, that those terms refer to the protection of the tenant from injuries caused by failures of the building--collapsing stairs, faulty walls, dangerous windows. This interpretation is consistent with the common law recognition of a landlord's "duty to use ordinary care to keep (common areas) in a reasonably safe condition." *Revell v. Deegan*, 192 Va. 428, 65 S.E.2d 543, 546 (1951). . . .

The Court further stated "if landlords face such liability, tenant safety might be greater, but rents may be higher, and apartment units, especially in urban centers, may become scarce. Such imponderables must be resolved by the state. The Virginia Supreme Court has said directly that no duty exists in this situation, and the General Assembly has not spoken distinctly." The Court went on to approve and uphold the opinion in the *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 107 S.E.2d 841 (1974).

Further examination of the Landlord and Tenant Act indicates that whenever the legislature used the word "Safety" it was referring to the premises or the condition of the premises. Under § 55-248.25 the tenant may assert as a defense to an action for the payment of rent that:

> There exists upon the leased premises, a condition which constitutes or will constitute, a fire hazard or a serious threat to life, health or safety of occupants thereof, including, but not limited to, a lack of heat or running water, or of light or of electricity or adequate sewage disposal facilities or an infestation of rodents, or a condition which constitutes material noncompliance on the part of the landlord with the rental agreement or provisions of law.

This is referred to in the same light in § 55-248.30.

Consequently, the Court is of the opinion that there is no duty on the landlord, in the absence of an expressed agreement in the lease, to provide the tenant with protection against the criminal acts of third parties in the form of guards, fences, walls, or adequate lighting as referred to by the plaintiff. The only special requirement dealing with security for the tenant which is placed upon the landlord under the Landlord and Tenant Act is to supply and install deadbolts and peep holes on doors upon the written request of the tenant and at the tenant's expense. See § 55-248.13:1.

The plaintiff has also alleged that an implied warranty of habitability runs from the landlord to the tenant and imposes the duty upon the landlord to provide adequate security measures and reasonable safeguards to protect the plaintiff from criminal activity by third parties. The plaintiff states that the failure to provide adequate lighting or other security measures was a breach of that duty.

It is clear to the Court that even if you consider the implied warranty to exist in addition to and without reference to any expressed warranties contained in the lease, the landlord is only obligated to provide a living unit which is fit for habitation by the tenant under the requirements of the building and housing codes. There is nothing in the code or the general law which extends the definition of habitability to the personal safety of a tenant against the criminal acts of a third party on the parking lot.

Under § 55-248.13(a)(2) the landlord shall "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. . ."

This requirement certainly places an obligation on the landlord to make sure the premises are habitable under the requirements of applicable building and housing codes materially affecting health and safety. To say that this warranty, whether implied or expressed, requires the landlord to take security measures to protect a tenant from the criminal acts of third parties is to give a meaning to "habitability" which is not found in the law nor can such interpretation be justified under any present case law.

The Court will therefore sustain the demurrer of the defendant and enter final judgment for the defendant.