## CIRCUIT COURT OF THE CITY OF RICHMOND

Richmond Tenants
Organization, Inc., et al.

v.

Richmond Redevelopment
and Housing Authority

### Case No. (Chancery) HA-681-3

By Judge T. J. Markow

### April 16, 1991

This matter is before the court on the motion for partial summary judgment filed by the plaintiffs, who are a number of individuals who live in public housing, and Richmond Tenants Organization, Inc., a Virginia corporation formed pursuant to federal regulations promulgated by the United States Department of Housing and Urban Development (HUD) with the majority of its membership made up of tenants of public housing (collectively RTO). Also before the court are pleas in bar of res judicata and laches, as well as a motion to dismiss, filed by the defendant, Richmond Redevelopment and Housing Authority (RRHA), which owns and manages all public housing in the City of Richmond, Virginia.

To make the issue clear, the procedural posture of this case must be set forth and paralleled with the filing and progress of a federal action between the parties, *Richmond Tenants Organization v. Richmond Redevelopment and Housing Authority*, 751 F. Supp. 1204 (E.D. Va. 1990). On June 11, 1990, RTO filed its bill of complaint in this court,

requesting (A) an injunction requiring certain security measures be taken by RRHA; (B) a declaratory judgment that applicable state and federal law and that §§ 6(a), (c), and (p) of the lease between RRHA and its tenants require the measures sought; and (C) a declaratory judgment that RRHA may not eliminate the provisions of § 6(p) from its lease without the agreement of the existing tenants.

The Board of RRHA adopted an amended lease on July 17, 1990, to become effective November 1, 1990. The proposed lease would eliminate paragraph 6(p) found in the prior lease. On October 15, 1990, while this matter was still pending, RTO filed an action in the U.S. District Court for the Eastern District of Virginia seeking an injunction to prohibit implementation of the amended lease for residents of public housing. RRHA requested the federal court to abstain, arguing that all items could be resolved in the state proceeding. The federal court denied the motion to abstain holding that "there are no reasons why these actions should not be brought separately in separate courts." November 20, 1990, Memorandum Opinion of Judge Williams, p. 2. The federal court granted a temporary injunction on October 31, 1990. On December 3, 1990, it entered its final order, accompanied by Findings of Fact and Conclusions of Law. Certain portions of the proposed lease were found unreasonable and were permanently enjoined from enforcement, and the temporary injunction was dissolved, allowing the balance of the lease to be implemented.

Both parties' motions to amend the judgment order were granted. On December 21, 1990, an order of amendment was entered, clarifying that the finding that certain lease terms were unreasonable "shall not be construed to prevent RRHA from including in its lease the language of provisions specifically mandated by federal statute or regulation." Additionally, the order stated, "The judgment of this Court was not intended to have any preclusive effect with regard to Plaintiffs' claims arising under Virginia state law or the Virginia Constitution." The final order was amended to read that the action was dismissed with prejudice to all issues between the parties under federal law and without prejudice as to issues between the parties under Virginia state law.

The RRHA then filed its plea of *res judicata* in the case at bar, contending that the action is barred as a result of the federal decision. It contends that the federal court could have exercised pendent jurisdiction over RTO's state claims, since they arose out of a "common nucleus of operative fact." *UMWA v. Gibbs*, 383 U.S. 715, 725 (1966).

However, the power to adjudicate pendent state claims is a discretionary one and the court may decide to dismiss them without prejudice. *Webb v. Bladen*, 480 F.2d 306, 309 (4th Cir. 1973). RRHA also cites *Nottingham v. Weld*, 237 Va. 416, 377 S.E.2d 621 (1989), for the proposition that a state court must give a federal decision the same preclusive effect it would receive in a federal court. When this rule is applied, we need only look to the federal court's amended order of December 21, 1990, since it states clearly that the action was dismissed "without prejudice as to issues between the parties under Virginia state law."

Although this case is not precluded by virtue of the plaintiffs' failure to include their state claim in the federal suit simply because they "could have" done so, it is nevertheless prevented from going forward because the questions involved have become moot.

The court is asked in the bill of complaint to declare the rights of the plaintiffs to the lease which was in effect in June of 1990. Since that time, RRHA adopted a new lease, which was evaluated by the federal district court to determine its compliance with the U.S. Housing Act, specifically as to whether it contained only reasonable terms and whether the tenants were given proper notice and adequate opportunity to comment. Having determined that those requirements were met, after some court-imposed adjustments, the court dissolved the temporary injunction, making the new lease effective as of December 3, 1990. Therefore, the lease that RTO would have this court to construe is no longer in effect as a result of the ruling of the federal court, and it would be a vain act to attempt to construe a lease which has been superseded. *See e.g., Levy v. Kosma*, 129 Va. 446, 106 S.E. 228 (1921). Further, principles of full faith and credit require this court to give the same effect to that judgment as it has in the federal courts. Va. Code Ann. § 8.01–389(B) (Repl. Vol. 1984).

As to Count II, plaintiffs state that "if state law were to determine that § 6(p) is duplicative of §§ 6(a) and (c), then such determination would moot the issue of state law grandfather status." This issue is determined by collateral estoppel. Collateral estoppel operates to prevent the relitigation of issues that were determined in previous actions between the same parties, even though they might be based on different claims. In these two cases, the plaintiffs were careful to separate their claims into state and federal law claims; however, any issues of fact that were determined by final judgment in the first case which

were necessarily decided there are precluded here. *Bates v. Devers*, 214 Va. 667, 671, 202 S.E.2d 917, 921 (1974).

In the federal suit, Judge Williams was charged with deciding whether every modified lease term was reasonable and whether the amendments were enacted after proper notice and adequate opportunity to comment. One of the allegations was that the notice to tenants that the amended lease would eliminate § 6(p) because it was duplicative of 6(a) and (c) was deceptive notice, since the plaintiffs contend that the provisions were not duplicative. Whether the sections were duplicative was then a necessary issue for the court to decide in order to reach its ruling that the notice was not deceptive. Paragraph 25, page 9, of the Findings of Fact states plainly: "Upon review, the Court finds that § 6(p) of the old lease, which requires security on the premises, essentially duplicated the provision of 6(a) and 6(c), which require that the premises be kept in a 'safe condition'."

In finding that this issue is collaterally estopped and that §§ 6(a) and (c) are essentially duplicated by 6(p), the court need not, and does not, make an interpretation of 6(a) and (c) under the new lease, as that lease is not before the court. The court makes no finding on the plea of laches.

An order sustaining the defendant's motion to dismiss and denying the plaintiff's motion for summary judgment [has been entered].

### August 7, 1991

This matter is before the court on the demurrer and special pleas of Richmond Redevelopment and Housing Authority to the second amended bill of complaint of Richmond Tenants Organization and some of its members.

After having ruled that the issues raised in the original bill of complaint were mooted when the lease which was its subject matter was superseded, this court granted the defendant's motion to dismiss the suit. In response to a motion to rehear, the court vacated its order "as to that part of Count I of the Bill of Complaint that applies to language in § 6(a) and (c) of the prior lease and to identical language in the existing lease between the defendant and its public housing tenants" and granted RTO leave to file an amended bill of complaint to seek relief under the new lease.

RTO's amended bill asks the court for a mandatory injunction requiring RRHA to provide (1) security patrols; (2) architectural review

for curtailment of secluded areas to improve security against drug violence; (3) adequate lighting, with use of polycarbonate bulbs or the equivalent; (4) bulletproof doors; and (5) inspection, after notice, of all door and window locks with repair of defects. RTO also asks for a declaratory judgment that these measures are required by federal regulations and § 6(a) of the dwelling lease.

This court finds no support for the contention that federal regulations require these measures. The language employed by federal regulation, which must be incorporated in the lease, is that it is an obligation of management "to maintain the premises and the project in decent, safe and sanitary condition," 24 C.F.R. § 966.4(e)(1), and "[t]o keep project buildings, facilities and common areas, not otherwise assigned to the tenant for maintenance and upkeep, in a clean and safe condition." 24 C.F.R. § 966.4(e)(4). Attempts by residents in public housing to assert federal causes of action based on a statutory right to decent, safe and sanitary housing found in various United States Housing Acts and attendant regulations have not met with success in the federal courts. The United States Court of Appeals for the Fourth Circuit analyzed such claims thoroughly in *Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210 (4th Cir. 1981), where the plaintiffs complained of "lead based paint, deterioration of the flooring and roofing, inadequate lighting and security patrols, and inadequate garbage pick-up contributing to infestation by rats and other vermin." The court found that the provisions in the acts are "broad declarations of policy . . . too general to create substantive rights in the tenants or duties in the landlords . . . . *Id.* at 1213. The court went on to say that the legislative history clearly indicated the congressional intervention to place the control of and responsibility for public housing in the local housing authorities. *Id. See also, Alexander v. U.S. Dept. of H.U.D.*, 555 F.2d 166 (7th Cir. 1977) (Congressional objective to provide decent homes does not impose upon HUD a fixed obligation to maintain suitable dwellings; these are broad future objectives to be achieved over many years); *Edwards v. District of Columbia*, 628 F. Supp. 333 (D. D.C. 1985) *aff'd*, 821 F.2d 651 (D.C. Cir. 1987) (42 U.S.C. § 1437 is a statement of policy and does not create an enforceable statutory right). RTO asserts also that it is entitled to the relief asked because § 6(a) of the present lease requires RRHA to provide the measures demanded. RRHA responds that under Virginia law, there is no statutory or common law obligation for a landlord to guarantee tenants'

safety against criminal acts of third parties. The court agrees with this position based on an analysis of *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 207 S.E.2d 841 (1974); *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 357 S.E.2d 200 (1987); *Deem v. Charles E. Smith Management, Inc.*, 799 F.2d 944 (4th Cir. 1986), and the General Assembly's amendment of the Virginia Code § 55–248.13(a)(3) to add the modifier "structurally" to the requirement to keep the premises in a "safe condition." However, RTO's claim is not one of statutory or common law but one of a contractual obligation.

RRHA argues that the litigation between these parties in the federal court, *Richmond Tenants Organization, Inc. v. Richmond Redevelopment and Housing Authority*, 651 F. Supp. 1204 (E.D. Va., Dec. 3, 1990, amended Dec. 21, 1990), is preclusive as to all issues between the parties. This court held in its letter opinion of April 16, 1991, that Judge Williams' finding in the federal suit that "Section 6(p) of the old lease, which requires security on the premises, essentially duplicated the provisions of 6(a) and 6(c) [now 6(d)], which require that the premises be kept in a 'safe condition'" operates to collaterally estop relitigation of that issue. Judge Williams made that finding in response to the allegation that the notice tenants received was deceptive in telling tenants that 6(p) was being eliminated from the lease because it was duplicative, though its omission would cause no loss to the tenants. He did not then clarify whether it was duplicative because subsumed within the "safety" requirement of 6(a) and (c) was the concept of providing security for the premises or whether 6(p)'s requirement of providing "security" really meant only structural safety. This leaves an ambiguity in the lease, which this court must construe.

RRHA argues that this court's holding that claims based on the old lease are moot means that it is excluded from consideration for any reason. This is incorrect. "A deliberate substitution of one expression for another where a contract is renewed, or novated, cannot be ignored." *Eppes v. Eppes*, 169 Va. 778, 812, 195 S.E. 694 (1938). Because RRHA chose to use the rationale of duplicative obligations to explain the elimination of 6(p), there is no logical way to construe 6(a) without considering it. As the *Eppes* court said, it "cannot be ignored."

Section 6(p) of the lease provided that RRHA was obliged: "To make every reasonable effort to maintain security on premises and in buildings and grounds owned by management." In construing words and phrases in a contract, "the safest and best mode of construction [is]

to give words, free from ambiguity, their plain and ordinary meaning." 4B M.J., *Contracts*, § 50 (1986). The plain and ordinary meaning of security has never been limited to structural safety, but rather protection from harm from any number of sources, the most usual source of harm being violence from third parties. The court holds that 6(p) in the current lease, which was held by Judge Williams to duplicate its obligations, must also extend that protection. This is in keeping, as well, with Judge Williams' statement that "the court finds that the various lease modifications were implemented by RRHA in an attempt to stem the rising tide of crime and violence in Richmond public housing."

Having found that RTO has contractual rights to security under the existing lease, the court, nevertheless, cannot, as a matter of law, issue the injunction that is requested. The United States Housing Act provides that local housing authorities are vested with "the maximum amount of responsibility in the administration of their housing programs." 42 U.S.C. § 1437. As stated plainly in *Ferguson v. Board of Supervisors*, 133 Va. 561, 567, 113 S.E. 860 (1922): "Courts of equity have no authority to interfere by injunction with the exercise in good faith by municipal bodies of discretionary powers conferred upon them by law." Citing with approval *Harrisonburg v. Roller*, 97 Va. 582, 34 S.E. 523 (1899).

Issues of fact that were determined in the federal case are precluded from relitigation between the parties. The court there found that "RRHA has taken several steps to control crime in its developments . . . . The Court finds that these modifications were a part of a good faith effort to improve the safety and quality of life in public housing." The parties cannot relitigate here whether any steps have been taken to control crime. It is not for this court to second guess RRHA in which are the "best" steps to take. RTO asks for bulletproof doors. Why not windows? Or, perhaps, bullet proof vests for all residents? This exercise in *reductio ad absurdum* is merely to demonstrate how slippery is the slope RTO asks the court to descend. It in no way is meant to make light of the very real dangers facing the residents of public housing from crime; however, funds are limited and opinions differ about the efficacy of programs — whether money is an issue in their operation or not. The court does not have expertise in operating housing projects and will not second guess those who do.