## CIRCUIT COURT OF SHENANDOAH COUNTY

Shenandoah Publishing
House, Inc.

v.

Shenandoah County
Board of Supervisors et al.

May 28, 1993

Case No. CL 93–50

BY JUDGE PERRY W. SARVER

This is a proceeding for injunctive relief, sanctions, reasonable costs, and attorney's fees brought by Shenandoah Publishing House, Inc. (referred to herein as "Newspaper") pursuant to the provisions of Title 2.1, Chapter 21, of the Code of Virginia, The Virginia Freedom of Information Act (referred to herein as the "Act"). The Defendants are the Board of Supervisors of Shenandoah County (referred to herein as "Board"), Cynthia G. Dellinger and W. William Ortts, Board members and sole members of the Budget and Finance Committee of the Board (herein referred to as "Committee").

Code § 2.1–346 provides for the granting of injunctive relief, the recovery of reasonable costs and attorney's fees, and Code § 2.1–346.1 provides for the assessment of a civil penalty of not less than $25.00 nor more than $1,000.00 against members of public bodies held to be in violation of Code § 2.1–343 (and other sections as recited therein).

At issue is whether a meeting of the Budget and Finance Committee of Board held on April 16, 1993, at which Lisa Daniel, a reporter for Newspaper, was refused admittance, violated the provisions of Code § 2.1–343.

The Court is of the opinion that the meeting of April 16, 1993, violated the provisions of the Act. It is quite clear from the testimony

of John D. Cutlip, County Administrator, that he and the Committee members were of the opinion that the meeting was not subject to the requirements of Code §§ 2.1–343 and 2.1–344, because the Committee was composed of only two members and that two members did not constitute a quorum of the Board. See definition of "meeting" in Code § 2.1–341. It is equally clear that Ms. Daniel made the necessary request for admittance to the meeting and that such was denied by Mr. Ortts. The denial was preceded by discussions between Mr. Cutlip and Ms. Daniel with regard to the definition of "meeting" culminating in the denial to Ms. Daniel to cover the meeting for the Newspaper. It is also clear that Committee does not claim exemption under the provisions of Code § 2.1–344, i.e., that the meeting was a properly convened executive session.

What is not so clear is whether the assemblage of Ms. Dellinger and Mr. Ortts was a "meeting." Since Mr. Cutlip is not a member of Board, his presence has no bearing on the application of the definition of "meeting."

In Code § 2.1–341, *Definitions,* "meeting" or "meetings" means the meetings including work sessions, when sitting physically, or through telephonic or video equipment pursuant to Code § 2.1–343.1, as a body or entity, or as an informal assemblage of (i) as many as three members, or (ii) a quorum, if less than three, of the constituent membership, wherever held, with or without minutes being taken, whether or not votes are cast, of any legislative body, of the Commonwealth, including cities, towns and counties . . . governing bodies of counties . . . .

Black's Law Dictionary, Rev. Fourth Edit., page 384, defines "constituent" as "he who gives authority to another to act for him." Applying this definition to the statutory definition of "meeting" or "meetings," a quorum of the constituent membership would be a quorum of the board of supervisors, the creator of the committee, and not a quorum of the committee to whom authority to act had been delegated.

It was not clear from the testimony as to what constituted a quorum. Supervisor Hirsch testified that the Board had six elected members and that a quorum was three, although he was somewhat unsure. The Court cannot find any quorum requirements in the Virginia Code, except with respect to special meetings. Code § 15.1–537 provides that at a special meeting, "a majority of the supervisors shall constitute a quorum." The

Court, after consulting with counsel, is of the opinion that a quorum of the Board is more than two members.

The statutory mandate of Code § 2.1–343 is that "all meetings shall be public meetings, including meetings and work sessions during which no votes are cast or any decisions made."

Note also that Code § 2.1–340.1 provides in part that:

> Committees or subcommittees of public bodies created to perform delegated functions of a public body or to advise a public body shall also conduct their meetings and business pursuant to this chapter. The affairs of government are not intended to be conducted in an atmosphere of secrecy . . . . Unless the public body specifically elects to exercise an exemption provided by this chapter or any other statute, every meeting shall be open to the public . . . .
>
> This chapter shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. Any exception or exemption from the applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.

Finally, it should also be noted that the definition of "public body" in Code § 2.1–341 "means any of the groups, agencies or organizations enumerated in the definition of 'meetings' as provided in this section, including any committees or subcommittees of the public body created to perform delegated functions of the public body or to advise the public body."

Board maintains that the 1993 amendment to Code § 2.1–341 adding the words "public body, including any" before "legislative" in the "meeting" definition is significant and will clearly make any assemblage of committee members subject to the provisions of Code § 2.1–343.

The Court, as stated at the time of the hearing, disagrees. All meetings of Board and its committees are presently subject to the provisions of the Act. The present definition of "public body" contained in Code § 2.1–341 includes any group, agencies or organizations enumerated in the definition of "meeting" and includes any committee or subcommittee created to perform delegated functions.

Board is a legislative body and is presently included in the "meetings" definition. Boards of supervisors in the Commonwealth of Virginia are representatives of the county and clothed with certain legislative and discretionary powers. *See, Ferguson v. Board*, 133 Va. 561, 113 S.E. 860, 861 (1922), and 5A M.J., *Counties*, § 34. If two member board committees are not subject to the Act at this time, then such committees will still be exempt after July 1, 1993, when the amendment to the definition of "meetings" takes effect.

While the assemblage or gathering of Ms. Dellinger and Mr. Ortts on April 16, 1993, may not have been a meeting in the strict sense of the definition, the purpose of the gathering violates the stated purpose of the Act as set forth in Code § 2.1–340.1. Board has sixteen committees (see attachment to Pl. Ex. 2) of which nine of the committees are composed of two members and the remaining seven have one member only. To adopt Board's position, none of their committee meetings would be subject to the provisions of Code § 2.1–343.

The Budget and Finance Committee was created at the January 2, 1992, meeting of Board. At this meeting, there was considerable discussion as to whether this Committee should have one or two members. On a 4 to 2 vote, the membership was set at two members since, in the Board's opinion, a membership of three would require compliance with the Act, and specifically the provisions of Code § 2.1–343 requiring that minutes be taken, that the press be notified and that the meeting be public. The reason for the majority's position was that compliance with the act created more work for an already overworked staff. The composition of the Committee was to be discussed further at the July, 1992, meeting, but there is nothing in the record with respect to further discussions.

Lisa Daniel testified that she attended eight or ten meetings in 1992, and County Administrator, John D. Cutlip, testified that the Board Chairman also attended, but no minutes were taken. Mr. Cutlip also stated that:

(1) He had attended a number of freedom of information seminars and was of the opinion that two member committees of the Board were not subject to the provisions of the Act. He also noted that there were differing legal opinions on this point.

(2) A Committee was created to advise the Board. This same function continued in 1993, and the Committee was directed to report to

the Board with findings on budget matters. Normally, it makes recommendations with respect to tax increases (or decreases).

(3) If a third Board member attended a Committee meeting, then the meeting would have to be cancelled or delayed since Code §§ 2.1–341 and 2.1–343 would be violated.

(4) The Committee did not collect or gather information from any source other than the Board. All budget and finance data is channeled through Board and given to the Committee for review and its recommendations to Board.

The Budget and Finance Committee is a committee functioning as contemplated in the statement of policy of Act. It was created to exercise functions delegated by Board and to advise Board in the exercise of what may well be its most important legislative functions, i.e., the exercise of its taxing authority.

Construing the definition of "meeting" contained in Code § 2.1–341 narrowly, an assemblage of two members of the Budget and Finance Committee is not a meeting. However, such construction defeats the stated policy of the Act. Code § 2.1–340.1. The Supreme Court stated in *Vollin v. Arlington County Electoral Board*, 216 Va. 674, 679 (1976), that:

> The plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow or strained construction. It is the intention of the lawmaker that constitutes the law. The primary object in the interpretation of a statute is to ascertain and give effect to that intention, although the construction may not be in conformity with the strict letter of the law.

While this Court's construction may not be in conformity with the strict letter of the definition of "meeting," to adopt Board's position would be to defeat the legislative intent of the Act as is clearly expressed in Code § 2.1–340.1. This policy is to be liberally construed to permit the observation of the operations of government. *City of Danville v. Laird*, 223 Va. 271, 276 (1982).

The Attorney General of Virginia opined that a prearranged meeting between two members of a seven-member board of supervisors and two members of a seven-member town council, scheduled to discuss joint service contracts and other governmental business, constitutes a "meeting" as defined in the Act. The members were selected for a

specific purpose and thus constituted a "committee" and were required to comply with the Act and may conduct closed meetings only if the requirements of Code § 2.1–344 are met. *Report of the Attorney General* (1990) at 8, 9. *See also, Report of the Attorney General* (1987–1988) at 238, and (1985–1986) at 332, 333.

The Court stated in *Barber v. City of Danville*, 149 Va. 418, 141 S.E. 126 (1928), that the construction of a statute by the Attorney-General, while in no sense binding upon the Court, is of the most persuasive character and is entitled to due consideration. The Court restated this in *Board of Supervisors v. Marshall*, 215 Va. 756, 214 S.E.2d 146 (1975), saying that construction of a particular statute by two Attorneys General over a period of seven years is not binding on the Court but is entitled to due consideration. The statute had been amended once during this period, but there was no amendment to the language construed by the Attorney General.

In the case now before this Court, there have been three opinions during the period 1985 to 1993, and while there have been amendments to the Act, there have been no amendments to the language construed by the Attorney General in each of the foregoing opinions. Each of these opinions were directed to members of the Virginia General Assembly.

Counsel for Newspaper also points out that in *Deal v. Commonwealth*, 224 Va. 618, 622 (1983), the Court held that the legislature is presumed to have had knowledge of the Attorney General's interpretation of the statutes, and its failure to respond with amendatory legislation evinces acquiescence in the Attorney General's view.

With respect to the request by Newspaper for injunctive relief, sanctions and an award of attorney's fees, as provided for in the Act, and Defendants' request to appropriate sanctions pursuant to Code §§ 8.01–271.1 and 2.1–346, the same are denied.

To grant Newspaper's request for sanctions against Committee or Board, or both, would have a chilling effect upon the exercise of their legislative responsibilities delegated by the General Assembly pursuant to Article VII of the Virginia Constitution. Likewise, to impose sanctions upon Newspaper would have a chilling effect upon the exercise of those rights guaranteed under the First Amendment of the U. S. Constitution.

All parties acted in good faith. Reasonable persons can and do differ as to the interpretation of the definition of "meeting" as is evidenced

by the several requests of state legislators requesting opinions from the Attorney General over the years, and the conflicting constructions advanced by local government attorneys as testified to by Mr. Cutlip and finally the difficulty that this Court has experienced in resolving the issues at hand and reconciling the stated policy of the Act with the definition of "meeting" as contained therein.

The violations were not willful or knowing and were committed in good faith. In the Court's opinion, they were unsubstantial violations based upon an erroneous construction of the Act. There is no evidence that actions have been taken by Committee or Board that would be subject to invalidation. While there is no evidence before the Court that Committee or Board will commit future violations of the Act, the Court deems it appropriate to grant the injunctive relief sought, and the final order will contain a provision enjoining Board or Committee from conducting closed committee meetings contrary to the provisions of Code § 2.1–343, except as permitted by Code § 2.1–344.