# CIRCUIT COURT OF THE CITY OF ROANOKE

Laura Jeter

v.

ARK Properties, L.L.C.

v.

Chris Arnold

March 30, 2004

Case No. CL03-524

By Judge Charles N. Dorsey

This case comes before the Court on cross-motions for summary judgment filed by the Plaintiff, Laura Jeter, and the Defendant, ARK Properties, L.L.C. ("ARK"). Having had the opportunity to consider the briefs filed by counsel and oral argument, both motions are now denied.

*Facts*

Both parties agree on certain facts for the purposes of summary judgment. ARK owns a house at 515 Highland Avenue in the City of Roanoke, Virginia, which is subdivided into four separate living areas leased to tenants. On Sunday, February 16, 2003, Chris Arnold, one of these tenants, somehow broke the glass window in the front door to his living area. He notified ARK of the condition, at which time ARK advised him to cover the door with plastic and someone would come to repair it the following Monday morning. Arnold complied with these instructions.

In the early morning hours of Monday, February 17, 2003, Jeter gave Arnold a ride home from the bar where she is employed and accompanied him to his front door. She alleges that, while traversing the porch to the front door, she encountered slippery conditions caused by earlier weather conditions,[1] on which she slipped and fell forward into the broken doorway. There she impaled her left hand on exposed glass shards. These injuries have left Jeter with permanent scarring and impairment of function in her hand.

She filed this action against ARK on May 9, 2003, alleging that ARK negligently failed to maintain the premises in a reasonably safe condition. In its grounds of defense, ARK has denied any negligence and has asserted certain affirmative defenses, including contributory negligence and assumption of risk. ARK has also filed a Third-Party Motion for Judgment against Arnold contending that his negligence led to Jeter's injuries. The parties have exchanged interrogatories and admissions. These cross-motions for summary judgment followed.

In their motions, both parties contend that the only questions before the court are matters of law. ARK asserts that it had no duty under Virginia law to maintain this area of the premises. Jeter claims that the entrance is a "common area" as a matter of law and that the landlord has a duty to safely maintain it both under the common law and Virginia Code § 55-248.13.

## Issues

The issues before the Court are:

(1) Does the door in question constitute a "common area" that would implicate the landlord's duty to maintain it under Virginia Code § 55-248.13 and the common law?

(2) If the door is a "common area" under Virginia law, do the parties agree on sufficient facts for the Court to dispense with the requirements of proof and decide the question of whether the landlord breached its duty?

## Analysis

Summary judgment is a drastic remedy that shortens litigation only when there are no material facts genuinely in dispute. *Slone v. General Motors Corp.*, 249 Va. 520, 522, 457 S.E.2d 51, 53 (1995); Rule 3:18. As the Supreme Court has made clear, "the filing of cross-motions for summary judgment does not, in itself, resolve the question of whether material facts

---

[1] Mot. for J. at ¶ 8.

remain in dispute." *Ashland v. Ashland Inv. Co.*, 235 Va. 150, 154, 366 S.E.2d 100, 103 (1988). Even where both litigants agree, the trial judge is not relieved of the responsibility and duty to make an independent evaluation of the record on the issue and ascertain whether facts remain in dispute. *Id.* (citing *Central Nat'l Ins. v. Virginia Farm Bur. Ins.*, 222 Va. 353, 356, 282 S.E.2d 4, 6 (1981). Such a review of the parties' motions in this case indicates that there are several material facts still in genuine dispute.

A. *The Door as a Possible Common Area*

Whether Jeter's injury occurred in a "common area" dictates whether ARK owed her a duty of care. As ARK notes in its motion, tenants and their invitees generally cannot recover for personal injuries received as a result of the failure of a landlord to perform repairs on premises surrendered to the tenant's exclusive control, even when there is a contractual obligation for the landlord to do so. *See, e.g., Caudill v. Gibson Fuel Co.*, 185 Va. 233, 38 S.E.2d 465 (1946); *Oliver v. Cashin*, 192 Va. 540, 65 S.E.2d 571 (1951). The common law has long recognized, however, "that it is the duty of the landlord, with respect to reserved common areas, to use ordinary care to keep such places in a reasonably safe condition." *See, e.g., Taylor v. Virginia Constr. Corp.*, 209 Va. 76, 79, 161 S.E.2d 732, 734 (1968) (citations omitted).

> It frequently happens that the owner of a building demises separate parts thereof to different tenants, access to which parts is by means of a passage, stairway, or other means of approach, which, while intended for the use of different tenants, is not, in itself, included in the demise to any one of them, and consequently remains in control of the landlord ... he is accordingly regarded as liable, both to the tenant and such other persons, for any injury caused by his failure to exercise reasonable care.

*Id.*

This rule is also echoed by the Virginia Residential Landlord Tenant Act ("VRLTA"), Va. Code § 55-248.13: "The landlord shall ... keep all common areas shared by two or more dwelling units of the premises in a clean and structurally safe condition." Although ARK owns no more than ten residences, the VRLTA could be applied in this case because ARK's property is considered a "multi-family" residential structure. As such, it falls

outside of the exemption for "single family residences" provided in Va. Code § 55-248.5(A). *See Henderson v. Vann*, 43 Va. Cir. 392, 394-95 (City of Norfolk 1997). As the Fourth Circuit has observed, the VRLTA does not define "safe condition." *See Deem v. Charles E. Smith Mgmt., Inc.*, 799 F.2d 944, 946 (4th Cir. 1986). But the term should be properly read, in conjunction with the common law, to "refer to the protection of the tenant from injuries caused by failures of the building – collapsing stairs, faulty walls, dangerous windows." *Id.* Thus, the statute does not supercede, but acts in furtherance of, the common law duty of a landlord to use ordinary care to keep common areas in a reasonably safe condition. *Id.* ("The [common law] will be read into the statute unless it clearly appears from the express language or by necessary implication that the purpose of the statute was to change the common law.") (Citations omitted.)

The rationale behind this rule is obvious. When the landlord reserves certain areas for the common use of his tenants, he is the logical one to see that they are kept in safe condition. *See Langhorne Rd. Apts., Inc. v. Bisson*, 207 Va. 474, 477, 150 S.E.2d 540, 542 (1966). Questions still arise, however, over whether the claimed injury occurred in an area that landlord demised to the tenant individually or to multiple tenants in common. This distinction, although often obvious, can be ambiguous when the tenant's exclusive use of the complained area is disputed, as occurred in *Paytan v. Rowland*, 208 Va. 24, 26-27, 155 S.E.2d 36, 37-38 (1967). *Paytan* involved a back porch that the landlord asserted was specifically within the plaintiff's exclusive control. The plaintiff contended that she never received notice that the porch belonged solely to her and she argued that it was, in fact, used by all the other residents for storage and to hang clothes. The Supreme Court held that, in such a case, the porch's status as a common area was a question of fact for the jury to determine. *Id.*

This case potentially presents a subtlety that has not been addressed in the Commonwealth. The porch of the residence in question clearly constitutes a common area in that it provides access to the front entrances of several tenants' apartments. ARK maintains, however, that the complained injury was ultimately caused, not by the porch, but by the individual tenant's door leading to the porch. It is the disputed nature of the door, like the disputed porch in *Paytan*, that moves this inquiry from a question of law to one of fact more properly presented to the jury.

The door faces the exterior of the building and the porch, or common area, for which the landlord would normally be responsible; however, the door also faces the interior of the apartment demised individually to Arnold. There is no storm door or other structure between the door and the porch. Without intending to be esoteric, it could conceivably be argued that the

doorway contains both exterior and interior components, and reasonable minds could differ over whether it constitutes part of the common area. For discussion and cases from other jurisdictions, see Allen E. Korpela, *Landlord's Liability for Injury or Death Due to Defects in Areas of Building (Other Than Stairways) Used in Common by Tenants*, 65 A.L.R. 3d 14, §§ 23, 31, 41, 52 (2004). Reasonable minds could likewise differ, depending on the evidence, over whether Arnold exercised exclusive possession over the door, or only possessed it in common with the other tenants.

Raising this issue at this stage of the proceedings, however, is not intended to inject "hair splitting" into the analysis but merely to confirm that facts may be introduced on which reasonable minds could conclude that the door, or part of it, was part of the common area just as there may be facts introduced on which reasonable minds could conclude that the door, or part of it, was not part of the common area. Depending on the facts actually introduced at trial, and the jury's exercise of its collective common sense, either conclusion might be reached without drawing a distinction that "create[s] in the law another of those strange anomalies which, once created, live on to haunt successive legal generations." *Langhorne Rd. Apts., Inc. v. Bisson*, 207 Va. 474, 477, 150 S.E.2d 540 (1966). However, at this stage of the proceedings, the Court finds this to be a material question of fact, about which the parties at this stage are still in genuine dispute. Summary judgment is not appropriate.

## B. *Landlord's Standard of Care and Evidence of Breach*

Even if the door constitutes a common area, or part of a common area, the landlord's duty to repair it remains one of ordinary care. *Deem*, 799 F.2d at 946. As Jeter alleges, "the owner of a premises has the duty to maintain the [common areas] in a reasonably safe condition, including the duty to remedy any unsafe condition within a reasonable time after the owner knew or should have known it was there." Pl.'s Mot. for Summ. J. at 5 (citations omitted). *See also Langhorne*, 207 Va. at 476-77, 150 S.E.2d at 541-42. An employee from ARK arrived to repair the door less than 24 hours after Arnold reported the dangerous condition. Plaintiff alleges the accident occurred 14 hours after notice to the landlord. (Pl.'s Mot. for Summ. J. at 3.) Defendant asserts that Nathan Wheeling, an agent of ARK, appeared on Monday morning, February 17, 2003, something less than 24 hours later, to repair the door. (Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 2.) There may have been some discrepancy in the instructions that ARK issued to Arnold in the meantime. Inclement weather may have further delayed ARK's repair attempts. Whether ARK acted to repair the door within a reasonable time

after being informed of the damage to it is a question of fact and summary judgment is not appropriate.

## C. *Assumption of Risk and Contributory Negligence*

ARK has further asserted the defenses of assumption of risk and contributory negligence, either of which could act to negate a finding of negligence by ARK. Assumption of risk involves a subjective test of whether the plaintiff "fully understood the nature and extent of a known danger and voluntarily exposed himself to it." *Holland v. Shively*, 243 Va. 308, 311-12, 415 S.E.2d 222, 224 (1992). Contributory negligence, in contrast, involves an objective test of whether the "plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." *Id.* Both defenses are jury issues unless reasonable minds could not differ about their resolution. *Id.* at 311.

In this case, upon the submitted facts and pleadings, neither defense is so unfounded as to be discarded as a matter of law, but neither defense is so compelling that no reasonable person could find otherwise. Evidence of drinking by Jeter may be introduced. "The plaintiff had consumed at least two or three beers. . . ." (Def.'s Opp'n to Pl.'s Mot. for Summ. J. at 4.) ARK asserts that the shards of glass were open and obvious. These same shards, Jeter argues, were a hidden danger completely obscured by plastic. It was very late in the evening. There were winter conditions that may have mandated a higher level of care than Jeter displayed. The Court cannot speculate as to what the evidence at trial will show. Those facts are for a jury to weigh.

Contrary to the parties' contentions, material issues of fact remain in dispute. Accordingly, the cross-motions for summary judgment are respectively denied.