# Richmond

GULF RESTON, INC. v. MRS. CHARLES J. ROGERS, EXECUTRIX
OF THE ESTATE OF CHARLES J.
ROGERS, DECEASED.

August 28, 1974.

Record No. 730772.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Harman and Poff, JJ.

*Richard W. Boone* (*Edward C. O'Connell; Carr, Bonner, O'Connell, Kaplan, Thompson & Diuguid,* on brief), for plaintiff in error.

*Adelard L. Brault; Thomas O. Lawson; H. Wise Kelly, III* (*Brault, Lewis, Geschickter & Palmer; Kelly, Louk, Lawson, Swinburne & Dixon,* on brief), for defendants in error.

I'Anson, J., delivered the opinion of the court.

Plaintiff, Mrs. Charles J. Rogers,[1] executrix of the estate of Charles J. Rogers, deceased, instituted this action against the defendants, Gulf Reston, Inc., and Prospect Industries, Inc., to recover damages for the wrongful death of her decedent. Plaintiff alleged that Gulf Reston was negligent in not performing its duty to protect the decedent, one of its tenants, from a criminal act committed by a third person; and that

---

[1] Sometimes spelled Rodgers in the briefs.

Prospect Industries was negligent in leaving roofing materials on the roof of the apartment building owned by Gulf Reston and occupied by the Rogers family. The jury returned a verdict for Prospect Industries but against Gulf Reston in the sum of $75,538.31. Judgment was entered on the jury's verdict, and Gulf Reston is here on a writ of error to the judgment. Cross-error was not assigned by the plaintiff to the judgment entered on the jury's verdict in favor of Prospect Industries.

Gulf Reston contends that: (1) as a matter of law plaintiff's evidence failed to show that it (Gulf Reston) had breached any duty which proximately caused the death of Rogers; (2) the jury's verdict on the issue of liability was inconsistent and erroneous; and (3) the court erred in refusing certain instructions.

The evidence, which is without conflict, shows that the Rogers family lived in a large crescent shaped apartment building located adjacent to Lake Anne in Reston, Virginia. The building was owned by and under the management of Gulf Reston. On September 7, 1970, while Rogers was on his apartment patio, an unknown trespasser on the roof of the apartment building threw aluminum paint on him, covering his whole body. Rogers, who suffered from hypertension and arteriosclerosis, died approximately eleven days later due to a heart attack.

Both before and after Rogers and his family moved into their apartment, many instances of unauthorized access to the apartment roof occurred. Trespassers made use of built-in concrete flower boxes to gain access to the roof. In one instance some young boys dropped water bags from the apartment roof on the plaza of the shopping area located in the crescent of the apartment complex. One of Gulf Reston's managers quickly stopped the action. In other instances trespassers redirected lights on the roof, used the roof to dive or jump into Lake Anne, and on one occasion put a hole in the roof directly above Rogers' apartment. Incidents of unauthorized access to the roof were reported to Gulf Reston, which had employed a security force to prevent the trespassing, vandalism and theft. Fairfax County police also cruised the area in cars. Many charges of trespassing were brought against teenage trespassers.

Prior to the tragic incident of September 7, Prospect Industries, pursuant to a contract with Gulf Reston, had commenced repair work on the roof of the apartment complex. Employees of the company used a ladder to gain access to the

roof. From August 28, 1970, when Prospect Industries temporarily ceased work, to September 7, the ladder was left erect against the building. When employees of Prospect Industries left the area on August 28, they left a five-gallon can of gilsonite, an aluminum paint, in the center of the roof. Prospect Industries had no knowledge that unauthorized people had on many occasions gained access to the roof, and Gulf Reston's agents, servants and employees did not know that the can of paint had been left on the roof.

Mrs. Rogers testified that while her husband was cooking steaks on his patio he saw two unknown young men climbing up to the roof of his apartment by way of the concrete flower box. She said her husband told them that the property was supervised by the police and they had better get down before they got into trouble, but they continued their climb to the roof and disappeared. The gilsonite paint was thrown on her husband about an hour later. Immediately after the tragic incident occurred, a young man was observed going down the ladder which was left against the building by the employees of Prospect Industries.

The principal issue in this case is whether the landlord owed the duty to protect the tenant from a criminal act of an unknown third party.

A landlord owes the duty to his tenants to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which he has control. However, a landlord is not an insurer of his tenant's safety. *Wagman* v. *Boccheciampe*, 206 Va. 412, 415-16, 143 S.E.2d 907, 909 (1965); *Revell* v. *Dugan*, 192 Va. 428, 433-35, 65 S.E.2d 543, 546, 26 A.L.R.2d 462 (1951). Traditionally, the obligation of the landlord is associated with maintaining the areas over which he has control in good repair and free of latent defects, rather than the duty to police.

As a general rule, a landlord does not owe a duty to protect his tenant from a criminal act by a third person. *Goldberg* v. *Housing Authority*, 38 N.J. 578, 186 A.2d 291, 10 A.L.R.3d 595 (1962); *Trice* v. *Chicago Housing Authority*, 14 Ill.App.3d 97, 302 N.E.2d 207 (1973); [2] *Applebaum* v. *Kidwell*, 56 App.D.C. 311, 12 F.2d 846 (1926). *Cf. Kline* v. *1500 Mass. Ave. Apt. Corp.*, 141 App. D.C. 370, 439 F.2d 477, 481. 43 A.L.R.3d 311, 315 (1970).

---

[2] Petition for an appeal was denied by the Supreme Court of Illinois on November 29, 1973, case No. 46178.

Restatement of Torts 2d, § 315, states in part that there is "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless . . . (b) a special relationship exists between the actor and the other which gives to the other a right of protection." Sections 314(a) and 320 of the Restatement cite common carrier-passenger, business invitor-invitee, and innkeeper-guest as examples of special relationships. Although the landlord-tenant relationship is not mentioned, it is said that the above enumerated special relationships are not exclusive.

In Virginia we have recognized that a special relationship does exist between a railroad company and its passengers, and that the company owes a duty to protect them from criminal acts of third persons which could be reasonably foreseen or anticipated. *Hines* v. *Garrett*, 131 Va. 125, 108 S.E. 690 (1921). However, we have found no relevant case imposing a duty on a landlord to protect a tenant from isolated criminal acts of third persons merely because of the relationship of landlord and tenant.

Plaintiff argues, in support of the judgment below, that, since Gulf Reston's construction of the flower boxes gave easy access to the roof of the apartment building and it had notice of the vandalism, it was reasonably foreseeable that trespassers could inflict injury on its tenants; and that therefore Gulf Reston was negligent in not affording protection from anticipated criminal acts. Plaintiff relies on *Hines* v. *Garrett, supra,* 131 Va. at 137, 108 S.E. at 693-94, and *Neering* v. *Illinois Cent. R. Co.,* 383 Ill. 366, 50 N.E.2d 497 (1943).

Plaintiff's reliance on *Hines* and *Neering* is misplaced. Those cases were based on special relationships existing between the parties.

In *Hines* the railroad company owed its passenger, an eighteen-year-old girl, a high degree of care, and, when she was discharged from the train in a dangerous place, it was reasonably foreseeable that she might be subjected to some hazards in walking back to her designated station. In *Neering* the railroad company owed the plaintiff the duty of ordinary care to provide a safe place to wait for the train. The station was frequented by hoboes and others of like character, and it was reasonably foreseeable that she might be assaulted.

In *Trice* v. *Chicago Housing Authority, supra,* the court rejected arguments that a special relationship existed between a

landlord and his tenant and that the landlord owed a duty to protect his tenant from intentional or reckless crimes committed by unknown third persons. There a child was killed when struck by a television set which was thrown from a floor above in a fifteen-story apartment building. The landlord had notice that articles had been thrown from the floors in the past. The court stated that "in determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant must be taken into account. Imposition of a duty does not depend upon foreseeability alone." 14 Ill.App.3d at 100, 302 N.E.2d at 209. *See also Lance* v. *Senior*, 36 Ill.2d 516, 224 N.E.2d 231, 233 (1967).

Several recent cases from other jurisdictions have recognized that under certain circumstances a landlord's appreciation of risk and harm from foreseeable criminal activities of third persons would impose upon him a duty to exercise reasonable care to provide adequate protection to his tenant, especially within those parts of the premises used in common by all the tenants. *Kline* v. *1500 Mass. Ave. Apt. Corp., supra; Johnston* v. *Harris*, 387 Mich. 569, 198 N.W.2d 409 (1972). In those cases large apartment buildings were located in areas where frequent robberies and rapes were committed, and such occurrences in their apartment buildings were known to the landlords. They are not controlling here. In *Kline* the court emphasized the fact that the security around the building had been relaxed after plaintiff became a tenant.

In the instant case, the activities of the trespassers were primarily limited to redirecting the lights, diving off the roof into the lake, and in one case putting a hole in the roof. The only single act by the trespassers threatening harm to third parties was the boyish prank of dropping water-filled bags off the roof. It could not be reasonably foreseen from these acts that there was a likelihood that acts of criminal violence would be committed on tenants.

Since no special relationship existed between Gulf Reston and Rogers, Gulf Reston was under no duty to protect Rogers from an intentional criminal act committed by an unknown third person. Although some risk of injury was involved, this did not impose a duty on Gulf Reston. To hold otherwise under the circumstances of this case would make the landlord an insurer of

his tenant's safety. Plaintiff's contention that Gulf Reston was negligent in so designing the building that the flower boxes provided easy access to the roof has no merit. We hold as a matter of law that Gulf Reston did not breach any duty it owed to Rogers, and the judgment against Gulf Reston is reversed and set aside.

In light of our holding, it is unnecessary for us to consider Gulf Reston's other assignments of error.

Since plaintiff did not assign cross-error to the judgment entered on the jury's verdict in favor of Prospect Industries, that judgment is affirmed.

*Judgment reversed as to Gulf Reston; affirmed as to Prospect Industries; and final judgment is here entered for both defendants.*