KLINGBEIL MANAGEMENT GROUP COMPANY, ET AL.

V.

BARBARA L. VITO

Record No. 840404

June 12, 1987

Present: Carrico, C.J., Poff, Compton, Stephenson and Thomas, JJ., and Cochran and Gordon, Retired Justices

*Benjamin J. Trichilo (Lewis & Trichilo*, on briefs), for appellants.
*William J. Carter (Robert W. Goodson; Carr, Goodson & Lee, P.C.*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this negligence case, we consider whether a landlord is liable for injuries to a tenant caused by the criminal acts of a third party and, if not, whether a local dead-bolt ordinance provides the basis for landlord liability in this case.

In February 1981, appellee Barbara L. Vito was raped in her apartment in Arlington by an unknown assailant. Subsequently, she filed this law action against the manager and owners of the 1821-unit apartment complex, appellants Klingbeil Management Group Company, Buckingham Apartments, Ltd., K.G.I. Company, Miden Company, Frank Stavroff, Richard W. Foster, and Jerome W. Vogel (hereinafter collectively, landlord). The tenant sought compensatory and punitive damages for personal injuries arising from the alleged negligent and wanton conduct of the landlord in failing to maintain proper security procedures, proper exterior lighting, and proper locks on the doors to the buildings.

In a November 1983 trial, the court below submitted the case to a jury solely on the issue whether the landlord was negligent due to the absence of a dead-bolt lock on the front door of plaintiff's apartment. The jury found for the tenant, assessing $150,000 compensatory damages, and the trial court entered judgment on the verdict. We awarded the landlord this appeal from the De-

cember 1983 judgment order, limiting the appeal to consideration of several issues which raise the questions noted above.

On the date of the incident, the tenant entered her ground-floor apartment about midnight. The front door to the apartment did not have a dead-bolt lock. Instead, the door was fitted with a standard "button" lock used for commercial and residential buildings. When a door with such a lock is opened with a key, which fits into the knob on the outside of the door, the button located on the inside of the door stays "in"; opening the door does not dislodge the button from the locked position.

After the tenant had unlocked the front door and had been inside her one-bedroom apartment for some time, she heard a noise and, upon investigating, noticed that the button on the front doorknob was "out." She was then grabbed from behind and assaulted. Her assailant subsequently left the apartment and never has been apprehended.

Subsequent investigation did not disclose with certainty how the assailant gained access to the apartment. There was no evidence of forced entry. The tenant did not know how or when the attacker entered. There was some evidence to show that he entered through an unlocked living room window. There was other evidence, however, that the lock on the front door could be easily "slipped" and the door opened with the use of a plastic credit card. In sum, there was ample evidence for the jury properly to conclude that the assailant gained access via the previously locked front door.

■ The first issue on appeal deals with the common-law liability of a landlord for injuries to a tenant under these circumstances. The trial court instructed the jury on negligence, proximate cause, intervening cause, and foreseeability. In effect, the court permitted, over defendants' objection, liability to be imposed on the landlord for injuries to the tenant due to the criminal conduct of a third party. This was error.

■ Traditionally, a landlord owes the duty to his tenants to exercise ordinary care to maintain areas over which he has control in a reasonably safe condition, rather than the duty to act as a policeman. In other words, "[a]s a general rule, a landlord does not owe a duty to protect his tenant from a criminal act by a third person." *Gulf Reston, Inc.* v. *Rogers*, 215 Va. 155, 157, 207 S.E.2d 841, 844 (1974). In *Gulf Reston*, we adopted the Restatement view that a person owes no duty to control the conduct of a

third person in order to prevent physical harm to another unless a "special relationship" exists giving rise to a right of protection. *Id.* at 158, 207 S.E.2d at 844. Examples of such a special relationship include common carrier-passenger, business proprietor-invitee, and innkeeper-guest. In *Gulf Reston*, we decided that no special relationship existed between the landlord and tenant in that case which would give rise to a duty on the landlord to protect the tenant from the intentional criminal act committed by an unknown third person. *Id.* at 159, 207 S.E.2d at 845. We adhere to that ruling in this case and hold there was no such common-law duty on this landlord.

 This brings us to the second issue on appeal. The tenant argues, and the trial court agreed, that liability could be imposed on the landlord under these circumstances for failure to comply with a local dead-bolt ordinance. Relying on the provisions of § 29-5(8) of the "Housing Standards Ordinance of Arlington County, Virginia," enacted in 1972, the court instructed the jury, over the landlord's objection, that no dwelling unit in a multiple dwelling building could be leased from one person to another unless all exterior doors of the dwelling unit "are equipped with a vertical bolt dead lock or a dead bolt with not less than a five-eighths of an inch minimum throw." The court further instructed the jury that if the landlord violated the foregoing requirement, it was guilty of negligence.

The landlord argues the trial court erred in ruling liability could be based on violation of the ordinance. It contends a State statute on the subject is controlling. Section 55-248.13:1 of the 1974 Virginia Residential Landlord and Tenant Act, Code §§ 55-248.2 to -248.40 (the Act), provides that the governing body of any locality may require by ordinance that "any landlord who rents five or more dwelling units in any one building shall install, upon the written request of the tenant and at a cost to the tenant of not more than twenty-five dollars per lock . . . , dead-bolt locks which meet the requirements of the Uniform Statewide Building Code for new multi-family construction . . . ."

The evidence showed that, while the tenant probably made an oral request prior to the incident for installation of a dead bolt on her apartment door, no request in writing was made by the tenant as required by the Act. Moreover, the lease agreement between the parties specifically referred to the Act and stated that the "lease and the tenancy created are subject to the provisions of "

the Act. The court refused an instruction embodying the statutory provision that was tendered by the landlord at trial. The landlord contends, as it did below, that the jury was misdirected by the trial court on this issue because the dead-lock requirement of the ordinance is invalid, being superseded by and in conflict with the statute.

In plain language, § 55-248.3 of the Act provides,

"The purposes of this chapter are to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants; to encourage landlords and tenants to maintain and improve the quality of housing; and *to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth*; provided, however, that nothing in this chapter shall prohibit a county, city or town from establishing a commission, reconciliatory in nature only, or designating an existing agency, which upon mutual agreement of the parties may mediate conflicts which may arise out of the application of this chapter, nor shall anything hereby be deemed to prohibit an ordinance designed to effect compliance with local property maintenance codes. *This chapter shall supersede all other local, county, or municipal ordinances or regulations concerning landlord and tenant relations and the leasing of residential property.*" (Emphasis added).

The fundamental rule is that local ordinances must conform to and "not be inconsistent with" the public policy of the State as set forth in its statutes. Code § 1-13.17. Nevertheless, the mere fact that the State, in the exercise of its police power, has enacted certain regulations does not prevent a locality from exacting additional requirements. *King* v. *County of Arlington*, 195 Va. 1084, 1090, 81 S.E.2d 587, 591 (1954). And, if both a statute and an ordinance "can stand together and be given effect, it is the duty of the courts to harmonize them and not nullify the ordinance." *Id.* at 1091, 81 S.E.2d at 591.

Relying on this authority, the tenant argues that the dead-lock provisions of the ordinance are consistent with State law. She says that the locality "has provided a more comprehensive ordinance designed to protect the interest of the tenant in a large dwelling."

In effect, the tenant contends that the Arlington ordinance is, in the language of the Act, "designed to effect compliance with local property maintenance codes." We disagree with the tenant's argument.

The same subject matter is addressed in the portion of the Arlington County ordinance at issue and in Code § 55-248.13:1, and the enactments are conflicting. The statute relieves a landlord who rents less than five dwelling units in any one building from the burden of installing a dead-bolt lock. Yet, the ordinance contains no such exemption and applies to all lessors of a multiple-dwelling building. The statute places the burden on a tenant to make a written request for installation of such a lock and permits the landlord to charge an installation fee. The ordinance, however, eliminates both the requirement for a written request and payment of a fee by obligating the lessor to equip the exterior doors with dead locks before the unit is leased.

More importantly, the dead-lock provisions of the ordinance have been pre-empted by the State law. The clear language of the Act evinces the legislative intent to establish "a single body of law relating to landlord and tenant relations throughout the Commonwealth." This intent cannot be effected, as the landlord argues, unless the provisions of the Act, in the words of the Act, are deemed to "supersede all other local, county, or municipal ordinances or regulations concerning landlord and tenant relations and the leasing of residential property." And the dead-bolt ordinance requirement cannot be construed as an attempt "to effect compliance with local property maintenance codes," an authorized subject of local enactments according to the Act. Installation of locks on doors is not related to "maintenance," that is, care and upkeep of property generally, but rather to security of dwelling units.

*King* v. *County of Arlington, supra*, relied on by the tenant, is distinguishable on its facts. In that case, this Court upheld a local ordinance prohibiting a person from keeping a vicious dog or one which evidenced the propensity to attack humans. This ordinance was held not to conflict with a State law providing for exclusive licensing and taxing of dogs by the State. The subject matter of the statute did not address the keeping of vicious dogs, the topic of the local enactment. The Court said, "Since the statute is silent on the subject, we think it is clearly within the police power of the locality to supplement the statute and prohibit the keeping of a vicious dog which may be a nuisance and endanger the lives or

safety of its citizens." 195 Va. at 1092, 81 S.E.2d at 592. In the present case, however, the statute is not silent on the subject of dead-bolt locks; it expressly speaks to the subject in a manner that conflicts with the ordinance.

Consequently, we hold the trial court erred in failing to rule as a matter of law that no liability attached to the landlord under the circumstances of this case. Therefore, the judgment of the trial court in favor of the plaintiff will be reversed and final judgment will be entered here for the defendants.

*Reversed and final judgment.*