## CIRCUIT COURT OF FAIRFAX COUNTY

Crown

v.

Anthony Kiedas et al.

### April 22, 1992

### Case No. (Law) 104901

BY JUDGE THOMAS A. FORTKORT

This case is before the Court on the Demurrer of defendant Lindy Goetz/L.G. Management to the plaintiff's Motion for Judgment. After hearing oral argument, the Court took the matter under advisement. For the reasons set forth below, the Demurrer is sustained. The plaintiff may amend the Motion for Judgment as to Lindy Goetz/ L.G. Management, if she wishes to do so, within 21 days of this letter date.

The events giving rise to this litigation are given in the plaintiff's Motion for Judgment and in the parties' memoranda. The defendants Anthony Kiedas, John Fruscianti, Chad Smith, and Michael Balzary, appearing as "Red Hot Chili Peppers," held a concert on the campus of George Mason University on April 21, 1989. The defendant Lindy Goetz/L.G. Management negotiated the contract between Red Hot Chili Peppers and GMU. The plaintiff claims in the Motion for Judgment that after the April 21st concert, as part of her duties as a member of the Program Board, she waited in the hallway of the Student Union Building opposite the room to which the band members were taken after their performance. While she and another female member of the Program Board sat waiting outside the room, Kiedas, Fruscianti, Smith, and Balzary came out of the room and approached them in the hallway. At that time, Kiedas asked if they "were the

women se[n]t to suck our dicks?" Fruscianti and Smith stood on either side, and Balzary stood behind Kiedas. When the two women protested, Kiedas approached the plaintiff as the other woman moved away. Kiedas then pulled down his pants and thrust his penis into the plaintiff's face, poking her in the cheek. The plaintiff claims that Kiedas assaulted and battered her intentionally, unlawfully, violently, and without her consent; and that Fruscianti, Smith, and Balzary aided and abetted in the assault and battery. Count I of the Motion for Judgment also claims that the four band members went to the plaintiff's car, knocked her to the ground, took her keys, and entered her car to leave without her permission or consent to take the car. The plaintiff seeks consequential damages of $1,000,000 in Count I from defendants Kiedas, Fruscianti, Smith, and Balzary.

Count II claims $1,000,000 in consequential damages from the defendants Lindy Goetz/L.G. Management and Variety Artists International. The plaintiff contends that these defendants knew or should have known that the band members had acted in a violent and sexually abusive manner before and after previous concerts, and that the assault and battery as described in Count I of the Motion for Judgment were likely to occur. The plaintiff claims that these defendants owed a duty to the plaintiff not to expose her to the likelihood of such assaults, and that as a result of the breach of that duty, the band members injured the plaintiff.

Count III of the Motion for Judgment contends that the defendants Commonwealth of Virginia and George Mason University owed a duty to the students in public universities in Virginia to protect them from the acts of persons brought onto campus and to ensure that the activities of campus-sponsored organizations do not expose the student body to unnecessary and foreseeable risks. The plaintiff claims that the Commonwealth and GMU knew or should have known that the band members had acted in a violent and sexually abusive manner before and after previous concerts. She also claims that as a direct result of the breach of duty by the Commonwealth and GMU, the plaintiff sustained injuries from the band members. In this Count, the plaintiff seeks consequential damages of $1,000,000. The plaintiff also asks for $1,000,000 in punitive damages from all defendants.

The Court has before it today the Demurrer of defendant Lindy Goetz/L.G. Management. As grounds for the Demurrer, the defend-

ant claims that he did not owe any duty of care to the plaintiff to protect her from the harm caused by the band members. In their Memoranda on the Demurrer, both parties cite *Marshall v. Winston*, 239 Va. 315, 389 S.E.2d 902 (1990), in providing Virginia law as to the duty to protect another from the criminal acts or intentional torts of third parties:

> Generally, a person owes no duty to control the conduct of third persons in order to prevent harm to another . . . . This is especially the case when the third person commits acts of assaultive criminal behavior because such conduct cannot reasonably be foreseen . . . .
>
> The general rule applies unless "(a) special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection." Restatement (Second) of Torts § 315 (1965).

*Id.* at 318. (Citations omitted).

The plaintiff contends that the duty of Lindy Goetz/L.G. Management is based upon both sections of this exception to the general rule. Under subsection (a), she claims that Lindy Goetz had a special relationship with the band members that imposed on him a duty to control their conduct. The plaintiff bases this claim on Goetz's contractual relationship with the band members, his negotiation of their contract with GMU, and his knowledge of their violent and sexually abusive conduct toward women. She also claims under subsection (b) that a special relationship existed between her and Lindy Goetz that imposed on him a duty to protect her from the injury.

The first question before the Court in ruling on the Demurrer is whether a special relationship existed between Lindy Goetz and the band members such that Goetz, who was acting as agent for the Red Hot Chili Peppers Band, is responsible for their intentional torts. The Restatement offers as examples of this special relationship that of a parent controlling the conduct of his child, a master controlling the conduct of his servant, a possessor of land or chattels controlling the conduct of a licensee, and a person taking charge of dangerous person controlling the conduct of that dangerous person. Restatement (Second) of Torts §§ 316–319. The parent-child, master-servant, and

licensor-licensee examples given in Restatement §§ 316 to 318 are clearly inapplicable to Goetz's relationship with the band members.

The master-servant relationship, however, is worthy of some discussion here because this relationship exists between Red Hot Chili Peppers and Lindy Goetz and confusion may arise as to which party is responsible for the acts of the other. Restatement § 317 states the duty of a master to control the conduct of the servant:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.

This Restatement section is applicable when the servant is acting outside the scope of his employment; if the servant is acting within the scope of his employment, the master may be vicariously liable for his conduct under the agency principle of *respondeat superior*. In the case presently before the Court, however, it is the servant who is charged with liability for the conduct of the master. A servant cannot be held liable for the intentional acts of the master under basic principles of tort law; foreseeability of the master's conduct, for example, is in no way available to the servant. Although Red Hot Chili Peppers and Goetz stand in a master-servant relationship to one another, the relationship is inapplicable in determining Goetz's liability.

The Restatement offers one final example of the special relationship mentioned in § 315(a) which merits consideration in ruling on the Demurrer presently before the Court. Restatement § 319 describes the duty of one in charge of a person having dangerous propensities: "One who takes charge of a third person whom he knows

or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement (Second) of Torts § 319. The Virginia Supreme Court recently addressed this type of special relationship in *Fox v. Custis*, 236 Va. 69, 372 S.E.2d 373 (1988), finding that a probation officer and a parole officer did not have a special relationship with a parolee who committed numerous torts in violation of his parole. The Court determined that the officers in *Fox* did not "assert custody in the sense that the parolee is in the personal care and control of the officer." *Id.* at 75. The Court found that the officers did not take charge or exercise control over the dangerous person within the principles articulated in Restatement §§ 315(a) and 319.

As to the present case, this Court finds no duty on the part of Lindy Goetz to control the conduct of the defendant band members. Although for the purposes of Demurrer the band members may be presumed dangerous, Goetz cannot be considered to have asserted custody over the band members as is required under *Fox* for a finding of liability. Goetz's contractual relationship with the band members, his negotiation of their contract with GMU, and his knowledge of their violent and sexually abusive conduct toward women do not rise to the level of "taking charge" of these third persons as defined by Restatement § 319 and Virginia case law.

The second question in ruling on the Demurrer is whether a special relationship existed under Restatement § 315(b) between Lindy Goetz and the plaintiff which would give the plaintiff a right to protection provided by Goetz from the conduct of the band members. Restatement § 314 gives as examples of this special relationship that of carrier-passenger, business invitor-invitee, and innkeeper-guest. The Virginia Supreme Court has addressed this special relationship as well in cases in which a tenant seeks to recover damages from his landlord for injuries inflicted on the tenant by a third person. In *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 357 S.E. 200 (1987), for example, the Court found that no special relationship exists between the landlord and tenant which would give rise to the landlord's duty to protect the tenant from the intentional torts of third parties.

The plaintiff argues in her Memorandum in Response to the Demurrer that *Marshall v. Winston, supra,* clearly establishes that

Lindy Goetz "did owe a duty to Plaintiff or the class of persons (namely female students at Defendant George Mason University) of which Plaintiff was but one." Memorandum, page 6. The plaintiff has not alleged, however, that a special relationship or that any relationship existed between her and Lindy Goetz which would give her a right to his protection from the conduct of the band members. She has alleged only that the band members had a reputation for acting in a violent and sexually abusive manner toward women, that such activity was their trademark, and that Goetz knew of their conduct. In view of the examples of the special relationship offered in Restatement § 314 and the Virginia Supreme Court's decision in *Klingbeil Management*, this Court finds that the relationship as alleged between the plaintiff and Lindy Goetz does not rise to the level required by Virginia law to impose liability.

The Court therefore sustains the Demurrer because the plaintiff has not properly alleged a special relationship between Lindy Goetz and the members of Red Hot Chili Peppers which would give rise to Goetz's duty to control the conduct of the band members, or between Lindy Goetz and the plaintiff which would establish Goetz's duty to protect the plaintiff from the band members' actions. However, the plaintiff may amend the cause of action against Lindy Goetz/L.G. Management, if she is able and wishes to do so, within twenty-one days of this letter date.