Present:  Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Kinser, JJ., and Whiting, Senior Justice

A.H.

                                                 OPINION BY
v.  Record No. 961984         SENIOR JUSTICE HENRY H. WHITING
                                              January 9, 1998
ROCKINGHAM PUBLISHING COMPANY, INC., ET AL.

FROM THE CIRCUIT COURT OF GREENE COUNTY
Lloyd C. Sullenberger, Judge

In this appeal, the primary issue is whether a newspaper
publishing company had a duty to warn a 13 or 14-year-old
independent contractor of the danger of a criminal assault by a
third party while delivering newspapers in early morning hours.[1]
Because the trial court sustained the company's motion to strike
the evidence, we state the facts in the light most favorable to
the plaintiff.  See Tarmac Mid-Atlantic, Inc. v. Smiley Block
Co., 250 Va. 161, 163, 458 S.E.2d 462, 464 (1995).

In May 1988, 13-year-old A.H.[2] and his parents agreed with
Rockingham Publishing Company, Inc., a newspaper publishing
company, that A.H. would deliver its newspapers in the City of
Harrisonburg.  Due to A.H.'s age, under Virginia's child labor
law Rockingham could only permit A.H. and its other carriers of
the same age to distribute its "newspapers on regularly
established routes between the hours of four o'clock ante
meridian and seven o'clock post meridian, excluding the time

---

[1] Although there may have been an issue whether the plaintiff
was an employee or an independent contractor, in this opinion, we
will assume, but not decide, that the plaintiff was an independent
contractor as he contends.

[2] Because this claim arises out of a sexual assault on a minor,
the plaintiff used a pseudonym to protect his identity.

public schools are actually in session."  Code § 40.1-109.
Eighteen months after A.H. started working for Rockingham, while delivering newspapers on his regular route between six and six-thirty a.m. on November 7, 1989, A.H. was sexually assaulted by a then-unidentified young man.

There had been three previous pre-dawn assaults of a sexual nature upon other young Rockingham carriers while they were delivering their newspapers.  None of the three prior assaults was shown to have occurred on or near A.H.'s route.

Rockingham knew about all three attacks before the assault on A.H.  The first assault was about five years, the second about four-and-a-half years, and the third about four months before the assault upon A.H.  All three victims gave similar descriptions of the young man who assaulted them.  The unknown assailant had not been arrested prior to A.H.'s assault.

After he became an adult, A.H. filed this action against the company and its circulation manager, K. Gary Anderson (collectively, Rockingham).[3]  A.H. alleged that the newspaper company and Anderson violated a legal duty of care owed him in failing to advise him or his parents of the previous attacks or to warn them of the danger of being attacked.  Following presentation of all parties' evidence before a jury, the trial court sustained Rockingham's motions to strike the evidence.  The plaintiff appeals.

---

[3] Although there may be differences in the potential liability of Rockingham and Anderson, we need not consider them in this appeal.

We must first decide whether there was a duty of care upon Rockingham in this negligence case.  See Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995).  Whether such duty exists is "a pure question of law."  Id. at 45, 458 S.E.2d at 451; Acme Markets, Inc. v. Remschel, 181 Va. 171, 178, 24 S.E.2d 430, 434 (1943) ("[t]he law determines the duty, and the jury, upon the evidence, determines whether the duty has been performed").

Familiar principles control our determination of whether Rockingham had a duty of care in this case.  Before any duty can arise with regard to the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person.  Burdette v. Marks, 244 Va. 309, 312, 421 S.E.2d 419, 420 (1992).  Examples of such a relationship between a defendant and a plaintiff include common carrier-passenger, business proprietor-invitee, and innkeeper-guest. Klingbeil Management Group Co. v. Vito, 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987).  And these examples are not exclusive. Gulf Reston, Inc. v. Rogers, 215 Va. 155, 157, 207 S.E.2d 841, 844 (1974).  Another example of a special relationship is that of employer-employee with regard to the employer's potential duty of protecting or warning an employee.  Restatement (Second) of Torts § 302B cmt. e (B) (1965).

Under the circumstances of this case, we conclude that Rockingham owed the same degree of care to A.H. that it would have owed if A.H. had been employed by Rockingham.  See Peele v. Bright, 119 Va. 182, 184, 89 S.E. 238, 239 (1916) (instruction that degree of care owed to independent contractor less than that

owed toward employees erroneous and properly refused). And, given the fact that Rockingham assigned a fixed route and time for A.H. to distribute its newspapers, we conclude that the necessary special relationship existed between Rockingham and A.H. with regard to the conduct of third persons.

Even though the necessary special relationship is established with regard to a defendant's potential duty to protect or warn a plaintiff against the criminal conduct of a third party, that duty, as in other negligence cases, is not without limitations. A court must still determine whether the danger of a plaintiff's injury from such conduct was known to the defendant or was reasonably foreseeable. "[W]here the duty does exist [arising from a requisite relationship], the obligation is not an absolute one to insure the plaintiff's safety[;] . . . . [t]here is . . . no liability . . . where the defendant neither knows nor has reason to foresee the danger or otherwise to know that precautions are called for." W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed. 1984); see also Burdette, 244 Va. at 312, 421 S.E.2d at 421 (since citizen being assaulted in police official's presence asked for aid, "[defendant] knew or should have known that [plaintiff] was in great danger of serious bodily injury"); Gulf Reston, 215 Va. at 159, 207 S.E.2d at 845 (insufficient evidence to show criminal violence upon tenant reasonably foreseeable by landlord); Trimyer v. Norfolk Tallow Co., 192 Va. 776, 785-86, 66 S.E.2d 441, 446 (1951) (insufficient evidence to show power company should have anticipated danger from uninsulated electric

lines); <u>Lynchburg Cotton Mills v. Stanley</u>, 102 Va. 590, 594, 46 S.E. 908, 909 (1904) (employer liable for failing to warn boy not quite 12 years old of <u>known</u> dangers of revolving wheels, belts, and pulleys in place of employment); Linda A. Sharp, Annotation, *Employer's Liability to Employee or Agent for Injury or Death Resulting from Assault or Criminal Attack by Third Person*, 40 A.L.R.5th 1, 14 (1996) ("that a 'special relationship' may exist is not dispositive of the duty question because the court must also find that the 'harm is foreseeable'").[4]

We will apply the foregoing principles in this case. Despite the special relationship, and even though the plaintiff's age may have imposed a greater degree of care upon Rockingham than it would have owed an adult in the plaintiff's circumstances, Rockingham had no duty to warn or protect him against harm unless the danger of an assault on the plaintiff was known or reasonably foreseeable to Rockingham. Since Rockingham did not know that the plaintiff was in danger of being assaulted

---

[4] We noted in <u>Gulf Reston</u> that a landlord owed certain duties of care to his tenant, 215 Va. at 157, 207 S.E.2d at 844, but held that the facts did not establish a sufficient pattern of prior criminal conduct to impose a duty upon the landlord to protect the tenant against the criminal acts of third parties. Our statement that "no special relationship existed between Gulf Reston and Rogers" was made in the context of that holding. <u>Id</u>. at 159, 207 S.E.2d at 845.

In <u>Burdette</u>, we were dealing with a deputy sheriff's duty to act in response to a citizen's request for aid when being assaulted by a third party in the deputy's presence. Our statement that "[i]n determining whether such a special relation existed, it is important to consider whether [the deputy sheriff] reasonably could have foreseen that he would be expected to take affirmative action to protect [the plaintiff] from harm," was made in the context of that situation. 244 Va. at 312, 421 S.E.2d at 421.

on that particular paper route, we consider whether the evidence is sufficient to raise a jury question whether an assault on him was reasonably foreseeable.

In ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen. Burdette, 244 Va. at 311-12, 421 S.E.2d at 420; Marshall v. Winston, 239 Va. 315, 318, 389 S.E.2d 902, 904 (1990); Wright v. Webb, 234 Va. 527, 531, 362 S.E.2d 919, 921 (1987); Gulf Reston, 215 Va. at 158-59, 207 S.E.2d at 844-45; Connell v. Chesapeake & Ohio Ry., 93 Va. 44, 57-58, 24 S.E. 467, 469 (1896). Accordingly, Rockingham's alleged duty to warn the plaintiff of the dangers of such an assault would not arise unless the then-known background of the three prior assaults was sufficient to create a reasonable foreseeability of the danger that similar criminal acts would be committed upon A.H. See Gulf Reston, 215 Va. at 159, 207 S.E.2d at 845; Keeton, supra, § 56, at 385. Recognizing his obligation to demonstrate the reasonable foreseeability of this danger, the plaintiff claims that the facts established at trial imposed a duty of care upon Rockingham to warn him of the danger of such an assault. Rockingham responds that the trial court correctly concluded that no such duty arose under the circumstances in this case.

In our opinion, the three prior sexual assaults on Rockingham carriers in various locations in the City of Harrisonburg in the five years preceding the assault on the plaintiff were insufficient to raise a jury issue of whether a sexual attack on the plaintiff was reasonably foreseeable. This

is not a case in which it was shown that the prior assaults were at or near the location of the plaintiff's assault, or that they occurred frequently or sufficiently close in time to make it reasonably foreseeable that the plaintiff would be similarly assaulted.[5]  Hence, we hold that the trial court correctly concluded that Rockingham had no duty to warn the plaintiff or his parents of the danger of an attack upon the plaintiff.

Nevertheless, plaintiff claims that his age and relationship to Rockingham created an additional duty of disclosure to satisfy a requirement that A.H. and his parents give an "informed consent" to the alleged risk involved in the performance of plaintiff's duties.  We do not reach the merits of this claim, however, because the plaintiff has not met his threshold obligation of introducing evidence sufficient to create a jury issue on the question of whether the assault on him was reasonably foreseeable.

Plaintiff also asserts that Rockingham's "method of doing business created an environment conducive to assault," basing this conclusion on the three prior assaults on Rockingham's carriers.  Since those assaults were insufficient to indicate a reasonable foreseeability that A.H. was in danger of future assaults, we reject this contention.

Next, plaintiff contends that in advising carriers about

---

[5] If the circumstances had been sufficient to suggest that there was a reasonable foreseeability that the plaintiff would be assaulted while on his early morning route, that issue would have been submitted to a jury.  See Page v. Arnold, 227 Va. 74, 80, 314 S.E.2d 57, 61 (1984) (court decides whether evidence of foreseeable danger sufficient to create jury issue).

safety precautions while on their routes and in equipping them with whistles, Rockingham voluntarily assumed a legal duty to (1) advise the carriers of the three prior attacks, (2) warn the carriers of the possibility of similar attacks, and (3) see that all carriers, including the plaintiff, received whistles and attended safety lectures. We decline to impose these additional duties upon Rockingham merely because it took precautions not required of it.

Duties imposed upon defendants and the violations of those duties are premised upon the objective concept of what a reasonably prudent person in the exercise of reasonable care would have done in similar circumstances. Hall v. Hall, 240 Va. 360, 363, 397 S.E.2d 829, 831 (1990). A defendant ordinarily cannot create duties to act merely by taking precautions not required of a reasonably prudent person exercising reasonable care in the absence of affirmative acts of negligence on his part in taking the precautions. See Keeton, supra, § 56, at 378.

Here, the plaintiff complains that Rockingham gave "inadequate" and "deceptive" warnings regarding the risks of assaults upon its young carriers while on their early-morning deliveries. Assuming, but not deciding, that Rockingham's safety literature, video, and safety whistles were inadequate, we conclude that, whatever Rockingham may have voluntarily done in providing this material, Rockingham's actions did not give rise to a duty to give a more complete warning. See St. Louis-San Francisco Ry. v. Mills, 271 U.S. 344, 347 (1926) (voluntarily furnishing one guard to protect strike-breaker did not raise duty

to provide additional guards).  Moreover, creation of a duty under these circumstances would discourage other parties from taking extra precautions to avoid being subjected to a liability which they otherwise would not have had.

Even if Rockingham's safety materials were deceptive, a matter we do not decide, we do not think that a duty was created in this case because neither the plaintiff nor his parents had seen or read any of the safety literature.  Plaintiff also contends that the newspaper published a "deceptive" article about a previous attack upon one of Rockingham's carriers.  Although the plaintiff's mother testified that she "probably read" the article, it was not published as a part of Rockingham's safety literature.  Therefore, its publication did not create a duty in this case.

In the rest of this opinion, we consider the plaintiff's contentions regarding the court's exclusion of certain evidence.  At the outset, he notes that the court excluded allegedly relevant evidence of prior attacks on non-paper carriers by an assailant matching the description and method of operation of the person who committed the assaults upon newspaper carriers.

When evidence of prior occurrences is sought to be introduced to establish foreseeability of an unreasonable risk of harm to others, a trial court must determine whether there is a "substantial similarity" between the prior occurrences and the occurrence in question.  See General Motors Corp. v. Lupica, 237 Va. 516, 521, 379 S.E.2d 311, 314 (1989).  In making that determination, a trial court exercises its discretion.  See

<u>Owens-Corning Fiberglas Corp. v. Watson</u>, 243 Va. 128, 138, 413 S.E.2d 630, 636 (1992). Absent an abuse of that discretion, we will not reverse a trial court's decision in admitting or excluding evidence of prior occurrences. <u>See</u> <u>Roll 'R' Way Rinks, Inc. v. Smith</u>, 218 Va. 321, 327, 237 S.E.2d 157, 161 (1977).

The plaintiff proffered a chart prepared by a Harrisonburg police sergeant summarizing the facts in five "non-carrier" assaults that occurred prior to the assault upon the plaintiff. According to the plaintiff, those assaults were "substantially similar" to the attack upon him. In contrast to the early morning assault upon the plaintiff, however, three of those assaults occurred in the afternoon or evening. A fourth assault took place in the victim's bedroom. The fifth assault, which occurred in the early morning, was upon a 20-year-old female. In view of these dissimilarities, we cannot say that the trial court abused its discretion in excluding this evidence.

The court also excluded the proffered testimony of two Harrisonburg police officers who investigated the assault upon the plaintiff and the prior assaults. The officers would have testified that they believed that all the assaults were committed by the same perpetrator and that they closed their investigation of all of the assaults upon the 1993 arrest of a young male who confessed to many of the assaults, including the attack on the plaintiff.

We think that the court correctly excluded this evidence. The issue that plaintiff sought to submit to the jury was what a reasonably prudent person in the exercise of reasonable care

should have concluded from the information reasonably available to persons in Rockingham's position prior to the assault upon the plaintiff.  That issue was not addressed by evidence of what two investigators may have concluded from information available to them either before or after the assault.

Moreover, the testimony of a lay witness's conclusions from certain facts in evidence is not admissible; the jury must draw whatever conclusion should be drawn from those facts.  See Lopez v. Dobson, 240 Va. 421, 423, 397 S.E.2d 863, 865 (1990).  And evidence of what happened or what was discovered after the assault upon the plaintiff was not admissible to show what Rockingham should have known prior to the assault.  See Turner v. Manning, Maxwell & Moore, Inc., 216 Va. 245, 253, 217 S.E.2d 863, 869-70 (1975) (evidence of post-accident change of conditions inadmissible to prove negligence).

Finally, the plaintiff contends that the court erred in excluding the testimony of the mother of one of Rockingham's previously assaulted carriers regarding that assault.  The plaintiff contends that this testimony was admissible to show that Rockingham was on notice of that assault.  We need not consider this contention since other evidence shows what is implicit in the trial court's ruling, *viz.*, that Rockingham was on notice of the three prior assaults on Rockingham's carriers.

In summary, we conclude that the plaintiff failed to establish either that the defendant owed a duty of care to the plaintiff under the facts of this case or that the court erred in excluding evidence proffered by the plaintiff.  Hence, we will

affirm the court's judgment.

<u>Affirmed</u>.

JUSTICE KINSER, with whom JUSTICE LACY joins, concurring in part and dissenting in part.

I agree with the majority opinion except its conclusion that the evidence is not sufficient to raise a jury question on whether an assault on A.H. was reasonably foreseeable.  In reaching this conclusion, the majority emphasizes that the prior assaults on Rockingham's carriers did not occur at or near the location of the assault on A.H. and that those assaults did not occur frequently or sufficiently close in time.  However, other facts, about which Rockingham had knowledge, show that an assault on A.H. was reasonably foreseeable.  Thus, I believe the evidence provides a sufficient basis upon which to submit to the jury the question of whether a sexual assault on A.H. while he was delivering papers on his route was reasonably foreseeable.  <u>See</u> <u>Page v. Arnold</u>, 227 Va. 74, 80, 314 S.E.2d 57, 61 (1984).

As the majority states, the three prior assaults occurred in distinct parts of Harrisonburg, and not on any one paper route. Even though the attacks occurred at different locations, they shared the common elements of being attacks on carriers while delivering papers on routes assigned by Rockingham.  Thus, the random locations of the assaults rendered an attack on any given paper route more, rather than less, foreseeable.  In other words, if the prior assaults had occurred in only one area of the city or on a particular paper route, then Rockingham would be

justified in arguing that it could not have foreseen that A.H.'s route would be the site of an assault. Also persuasive is the fact that the assaults occurred in the same type of location, a paper route, thereby rendering an attack on A.H.'s route foreseeable.

Furthermore, the modus operandi of the prior assaults and the three victims' descriptions of the assailant are significant factors in the foreseeability analysis. With regard to the assailant's modus operandi, all prior attacks occurred in the pre-dawn hours while the three victims were delivering Rockingham's papers. The victims reported that the assailant grabbed them from behind and attempted to engage in sexual acts. The victims also gave strikingly similar descriptions of their assailant. All the descriptions included the same attributes as to age, gender, race, and physique. In sum, the time and method of the attacks, the sexual nature of the assaults, and the similarity in the victims' descriptions of the assailant are facts sufficient to raise a jury question.

Finally, even though the first two assaults occurred four-and-a-half and five years before the assault on A.H., Rockingham knew that the assailant in the first two attacks had never been apprehended. Thus, when the third assault occurred, four months before the assault on A.H., and the victim provided a description of the assailant remarkably similar to those given by the first two victims, it was then reasonably foreseeable that the danger to Rockingham's carriers still existed.

For these reasons, I would reverse the trial court's

judgment sustaining the motions to strike the evidence and remand the case for a new trial.