# CIRCUIT COURT OF LOUDOUN COUNTY

Blake Harrison

v.

Chris Bittler,
Denise Gaquin,
and Brian Gaquin

March 2, 2006

Case No (Law) 32674

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on February 3, 2006, for argument on the Demurrer of the Defendants Brian Gaquin and Denise Gaquin to the Motion for Judgment filed on October 18, 2004, by the Plaintiff, Blake Harrison. After consideration of the Memorandum in Support of Defendants Brian and Denise Gaquin's Demurrer (filed January 27, 2006), the Plaintiff's Response to the Demurrer of Denise Gaquin and Brian Gaquin (filed January 30, 2006), and the argument of counsel on February 3, 2006, the Demurrer to Counts II, III, and IV of the Motion for Judgment is sustained. There is no need to address the Demurrer as it relates to the punitive damages and attorney's fees claims. The Motion for Judgment is dismissed with prejudice as to the Gaquins.

Harrison is not granted leave to amend his Motion for Judgment because he cannot in my opinion state a cause of action against the Gaquins under the circumstances of this case as alleged.

As this case is before the Court on a demurrer, any decision thereon must be based on several well-established general principles. A demurrer only tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Market Poultry Products, Inc.*, 258 Va. 187, 189 (1999). A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397 (1991). However, a demurrer does not admit the correctness of the pleader's conclusions of law. *Fox v. Custis*, 236 Va. 69, 71 (1988).

*Demurrer to Count II: Negligence of Brian and Denise Gaquin*

The Gaquins demur to Count II of the Motion for Judgment on the ground that it does not allege a breach of legal duty owed by them to Harrison, Plaintiff, or Bittler, the other defendant. I agree with the Gaquins.

Whether a legal duty exists is a pure question of law. *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 106 (2001); *Burns v. Johnson*, 250 Va. 41, 45 (1995). If the allegations are legally sufficient to establish a duty as a matter of law, then it becomes a matter for the jury, upon the evidence, to determine whether the duty has been breached or performed. *Acme Markets, Inc. v. Remschel*, 181 Va. 171, 178 (1943).

Virginia recognizes the general rule that a person has no duty to control the conduct of third persons. In doing so the Virginia Supreme Court recognizes the principle set forth in the *Restatement of Torts (Second)* § 315 (1965) as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:
>      (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>      (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*See, e.g., Marshall, Administratrix v. Winston*, 239 Va. 315, 318 (1990); *Fox v. Custis*, 236 Va. 69, 74 (1988); *Klingbeil Management Group Co. v. Vito*, 233 Va. 445, 447 (1987); *Gulf Reston Inc. v. Rogers*, 215 Va. 155, 158 (1974).

The foregoing general rule is especially the case when a third person commits acts of assaultive criminal behavior because criminal conduct cannot reasonably be foreseen. *Marshall*, 239 Va. at 318. The policy considerations underlying this rule are obvious. There is generally no duty to act as an insurer for the safely of others. A landowner is not required to act as a police officer. In Virginia strict liability is the rare exception. Any duty on a landowner would necessarily involve an additional expense.

Restatement § 315(a) does not apply to this case because Harrison does not argue that the Gaquins had a duty to control Bittler's conduct. However, Harrison argues that the facts as alleged in the Motion for Judgment show that a special relationship exists between the Gaquins and him, which imposes a legal duty on them to protect him under Restatement § 315(b). I do not agree.

Harrison was a social guest on the property of the Gaquins. He was a licensee. *Bradshaw v. Minter*, 206 Va. 450, 452 (1965) (a social guest "is an invitee who is not an invitee" and "the great weight of Anglo-American authority classifies him as a bare licensee, even though he was expressly invited.")

Counsel have not cited, and I have not found, any Virginia authority on the specific duty of a social host (licensor) to a social guest (licensee) as to harm from the assaultive criminal behavior of third persons on the property of the social host (licensor). However, there are Virginia cases including some of the ones cited above, that concern the duty owed by an occupant of land to an invitee.

As a general rule, in Virginia there is no duty on an owner or occupier of land to warn his invitees of, or protect them against, harm from the criminal act of a third party while the invitee is on the premises of the owner or occupier. *Dudas v. Glenwood Gulf Club*, 261 Va. 133, 139 (2001); *Gupton v. Quicke*, 247 Va. 362, 363 (1994); *Wright v. Webb*, 234 Va. 527, 530 (1987).

However, as fully explained in *Yuzefovsky*, there are some narrow exceptions to the general rule of no duty, but the Virginia Supreme Court has "rarely found the circumstances of the cases under review to warrant application of these exceptions." 261 Va. at 106.

*Yuzefovsky* also sets forth the general analysis applicable for determining whether an exception to the general rule applies. First, a plaintiff must establish that there is a special relationship between him and the defendant or between the defendant and the third party criminal actor. The special relationship can arise from either one recognized as a matter of law, such as between an innkeeper and his guest, or from the factual circumstances of a particular case. Second, a plaintiff must establish the special relationship creates a duty of care, such as to warn and/or protect him, as a result of the

particular circumstances of the special relationship, including the known or reasonably foreseeable danger of harm to him from the criminal acts of a third party. So it is a fact-specific determination. Also, the imposition of the duty does not depend upon foreseeability alone, as consideration must be given to the magnitude of the burden of guarding against harm to the plaintiff and the consequences of placing the burden on the defendant. See *Wright*, 234 Va. at 531; *Gulf Reston*, 215 Va. at 159.

As to business owner and invitee and landlord and tenant, there is no duty to take measures to protect an invitee against criminal assaults unless the business owner or landlord knows that criminal assaults against persons are occurring, or are about to occur, on the premises which indicate an "imminent probability of harm" to an invitee. *Wright*, 234 Va. at 533. As expressed in *Thompson v. Skate America, Inc.*, 261 Va. 121, 130 (2001), "imminent probability of harm" is merely a heightened degree of foreseeability of the harm. *Glenwood Golf Club* makes it clear that there is no distinction between a duty to warn and a duty to protect; the same standard applies. 261 Va. at 141.

A landlord owes the duty to his tenant to exercise ordinary care and diligence to maintain in a reasonably safe condition areas over which the landlord has control. *Gulf Reston*, 215 Va. at 157. A business owner owes the same duty of reasonable care to his invitee that a landlord owes to a tenant. *Wright*, 234 Va. at 530. On the other hand, an owner or occupant of land (a social host or licensor) has no duty to keep his premises in a safe and suitable condition for the use of a licensee (social guest), and is only liable for willful and wanton injury so far as the condition of the premises is concerned. *Bradshaw v. Minter*, 206 Va. 450, 453 (1965). However, an owner or occupier of land is liable to a social guest or licensee for injuries caused by active or affirmative negligence or by willful or wanton conduct. *Tate v. Rice*, 227 Va. 341, 345 (1984); *Bradshaw*, 206 Va. at 453.

I think that, after considering the cases cited herein as to occupiers of land, Virginia law imposes a lesser duty on a social host or licensor to a social guest or licensee than the duty imposed on a business owner to business invitee.

If Virginia law does not deem a special relationship to exist between a business invitor and his invitee or between a landlord and his tenant so as to impose a duty to warn or protect against the criminal acts of third parties unless and until the business invitor or landlord is aware of an "imminent probability of harm" to a business invitee or tenant, then because of the lesser duty imposed on social host or licensor, a duty, if any, to protect from third party criminal conduct imposed on a social host licensor to his social guest

licensee would be under the same circumstances as the duty imposed on a business invitor or landlord.

If the foregoing analysis is applied to the facts alleged in the Motion for Judgment, I do not think that it creates as a matter of law the requisite special relationship between the Gaquins and Harrison so as to give rise to a duty upon them to protect Harrison from the criminal assault of Bittler. I do not think that permitting underage persons to consume alcohol on the premises imposes on the owner a duty to protect licensees from third-party criminal acts. Such acts are not foreseeable.

It is not reasonably foreseeable that criminal assaults will occur if underage persons are allowed to consume alcohol. Nor is it reasonably foreseeable that persons with little, if any, experience in consuming alcohol are likely to engage in criminal assaultive behavior.

Even if the "imminent probability of harm" standard were to apply so as to create a special relationship between the Gaquins and Harrison, I do not think that the facts alleged in the Motion for Judgment support a finding that the Gaquins knew or should have known of an imminent probability of harm to any licensee, including Harrison, on their premises at the time that he was criminally assaulted by Bittler. There is no allegation that the Gaquins knew or should have known of any prior altercations of any nature involving Bittler. Bittler is not the known dangerous licensee on the Gaquin's premises such as the dangerous business invitee with a prior assaultive history in *Skate America*. At most the Motion for Judgment alleges that the Gaquins became aware of two "physical altercations" between intoxicated party-goers. An allegation of a "physical altercation" is not necessarily an allegation of a criminal assault. There is no allegation that the Gaquins knew that Bittler "touched or bumped Blake in a threatening and insulting manner" earlier in the evening before the criminal assault occurred.

Further, there is no allegation of when the two "physical altercations" occurred in relation to the Bittler criminal assault upon Harrison. Whatever the nature was of the earlier "physical altercations" or the nature of the earlier touch and bump of Harrison by Bittler, Harrison was not concerned for his safety as he laid down and went to sleep on the ground in the Gaquin's yard where the party was taking place.

The allegations do not support the conclusion that the Gaquins knew or should have known of an imminent probability of harm to any licensee, *i.e.*, any social guest at the party, including Harrison, from any other social guest, including Bittler.

As to the negligence allegations of Count II, first, Virginia law imposes no duty on a social host to protect a social guest from third party criminal

assaults. Second, even if such a duty to protect could arise if there is a special relationship between the social host and the social guest analogous to the business invitor-invitee or landlord-tenant exception of "imminent probability of harm" known to the social host, the Motion for Judgment does not allege sufficient facts to demonstrate an "imminent probability of harm."

Harrison argues that his injury resulted from an organized activity that the Gaquins permitted to occur on their property. As stated above, where the activities of a social host constitute active or affirmative negligence as distinguished from passive negligence, that is, condition of the premises, a duty to exercise ordinary care is imposed on a social host. *Bradshaw*, 206 Va. at 453. For the duty of ordinary care to be applicable, the injury to the licensee must result from active conduct by the social host. I do not agree with Harrison's argument.

First, there is no allegation of any active conduct on the part of the Gaquins. They did not host the party. They did not serve any alcohol to underage persons. They passively permitted the party to occur on their property. Second, permitting a party to occur on their premises where underage persons consumed alcohol is not the cause of Harrison's injuries. As I said previously, it is not reasonably foreseeable that permitting underage persons to consume alcohol will cause criminal assaultive behavior to occur.

The Demurrer to Count II is sustained.

### Demurrer to Count III: Premises Liability

Count III of the Motion for Judgment merely re-alleges all the allegations of Count II concerning negligence and labels it as a cause of action for "premises liability." It does not state a cause of action distinct from the negligence claim that Harrison attempted to state in Count II. Premises liability is just a category of torts that concerns the liability of an owner or occupier of land for damages or injury occurring on the land.

The Demurrer to Court III is sustained.

### Demurrer to Count IV: Illegal Consumption of Alcohol

The allegations of Count IV are merely the same allegations as set forth in Counts II and III with an additional allegation in paragraph 82 that the Gaquins breached a duty to Harrison resulting in injury to Harrison. As noted above, a demurrer does not admit the correctness of legal conclusions.

The allegations of Count IV attempt to re-allege the negligence claim of Counts II and III with particular emphasis on the Gaquins allowing underage

consumption of alcohol on their property. It is not alleged that the Gaquins are underage and cannot consume alcohol. It is not alleged that the Gaquins sold or provided alcohol to underage persons. Significantly, there is no allegation that allowing the underage consumption of alcohol on their property caused Bittler to assault Harrison.

I am not considering Mr. Whittington's "dram shop" argument, which he made on February 3, 2006, because it is not stated as a ground in the Demurrer. See Va. Code § 8.01-273.

The Demurrer to Count IV is sustained.

## Punitive Damages and Attorney's Fees

As the Demurrer is sustained to the claims against the Gaquins in Counts II through IV of the Motion for Judgment, there is no need to consider the issues involving Harrison's request for punitive damages. An agreed order sustaining the demurrer as to the attorney's fees claim has been entered.

## General Considerations

The actions of the Gaquins as alleged in the Motion for Judgment are reprehensible and cannot be commended or condoned. On their face, the allegations show that the Gaquins violated Va. Code § 4.1-306(A1) by assisting in the provision of alcoholic beverages to another person knowing that such person was less than 21 years of age, a Class 1 misdemeanor. However, criminal liability for assisting in the provision of alcohol to underage persons is separate and distinct from any possible civil liability for injury to a social guest where a social host allowed underage persons to consume alcohol. The criminal conduct is the assistance in providing alcohol to underage persons, and not the allowing a social guest to be injured on premises where alcohol was provided to underage persons. If the latter is to be considered as criminal conduct, then it is a matter for the legislature, not the courts.

Further, if this case were allowed to go to a jury with the evidence being as alleged in the Motion for Judgment with the jury being instructed that the Gaquins owed a duty of ordinary care to Harrison, then any jury would almost certainly return a verdict in favor of Harrison due to the nature of the conduct of the Gaquins. If jurors are told that they could find the Gaquins liable, then almost certainly they would. It would be very close to strict liability. Any reasonable juror would think that, because he was instructed that the Gaquins owed a duty of ordinary care to Harrison, that duty would have to

have been breached by the Gaquin's assisting in the provision of alcohol to underage persons, especially in light of the senseless, brutal, and unjustified criminal assault by Bittler resulting in severe and permanent injury to Harrison. It would be very difficult for a juror to control his sympathy for Harrison.

The foregoing is why I feel that the establishment of a duty, if any, is a matter of law to be determined by a court. Our system would be fraught with uncertainty if the determination of a duty rested with a jury.

This is a tort case involving negligence. Negligence deals with foreseeability. As much as criminal conduct seems to be prevalent in our society, it is still the rare exception to normal human conduct. Almost all of society is law-abiding. Most persons do not commit crimes. Hence, it is common sense that criminal conduct is, in almost all circumstances, not foreseeable. If it is not usually foreseeable, then there should generally be no duty to protect a person from the criminal conduct of a third person. That is the general rule of Restatement § 315 as recognized in Virginia. The rare exception comes from the special relationship, such as the case of "imminent probability of harm" as discussed above. The Virginia Supreme Court has ruled that the special relationship, imminent probability of harm exceptions to the general rule may apply depending on the circumstances between business invitor and invitee, but has not, as yet, decided if the same rule should apply to a social host and guest (licensor-licensee) situation.

Because of the policy considerations mentioned above, I decline to extend the special relationship, imminent probability of harm exception to the general rule of no duty to protect against third party criminal conduct to a social host as to a social guest on the social host's property. Even if the narrow exception were to apply, I do not think that the facts as alleged in the Motion for Judgment show that the Gaquins knew or should have known of an imminent probability of harm to a licensee, including Harrison.